**UNITED STATES, Appellee,**

**v.**

**Johnny R. EDWARDS, Ship's Serviceman Second Class, U.S. Navy, Appellant.**

**No. 66,952.**
**NMCM 89 1888.**

U.S. Court of Military Appeals.

Argued April 8, 1992.

Decided Sept. 25, 1992.

For Appellant: *Lieutenant Commander Richard D. Zeigler*, JAGC, USN (argued); *Lieutenant James R. Crisfield, Jr.*, JAGC, USNR (on brief).

For Appellee: *Lieutenant Ralph G. Stiehm*, JAGC, USNR (argued); *Colonel T.G. Hess*, USMC (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial before a panel of officer members at the Naval Support Activity, New Orleans, Louisiana. Contrary to his pleas, he was convicted of rape of V, attempted rape of D, assault with intent to commit rape on D, and extortion by communicating to D a threat to kill. Arts. 120, 80, 134, and 127, Uniform Code of Military Justice, 10 USC §§ 920, 880, 934, and 927, respectively.[1]

We granted appellant's petition to consider two issues. First, whether trial counsel's argument on sentence was improper. Second, whether the charges of extortion and assault with intent to commit rape were multiplicious with the charge of attempted rape of the same victim.

I

*Trial Counsel's Argument*

Appellant attacks trial counsel's sentencing argument for the first time on appeal. Specifically, he contends that trial counsel's argument that appellant lacked "remorse for what he's done" would have persuaded the members to draw an impermissible negative inference from appellant's decision to

1. Appellant's sentence included a dishonorable discharge, reduction to the lowest enlisted grade (E–1), total forfeitures, and confinement for 35 years. The convening authority approved the sentence, and the Court of Military Review affirmed the approved findings and sentence in an unpublished opinion dated June 17, 1991.

plead not guilty and his decision to not testify at sentencing. He claims trial counsel's argument amounted to improper comment on appellant's exercise of his constitutional right to silence, resulting in reversible error. *See United States v. Johnson,* 1 MJ 213 (CMA 1975).

Trial counsel's sentencing argument was as follows:

TC: May it please the court, Captain Grumme, Members. Not much be [sic] said when a servicemember—a second class petty officer in the United States Navy is convicted of the offenses the type the accused has been convicted of today. A rape, an attempted rape.

*Even less needs to be said when that individual has shown absolutely no remorse for what he's done. He's shown no remorse. The accused showed his true colors and mettle when he got on the stand yesterday and told you the story he told you. It's apparent that he's not ready to accept responsibility or accountability for his actions.*

The ac—the testimony of the witnesses and the accused and especially the testimony of Lieutenant Commander Rizzo shows that this individual has no potential for rehabilitation. Government asks for you to look at the—look at the Prosecution Exhibits 11, 12 and 13. Look at the personal behavior traits—the marks. This individual has no—no potential for service in the United States Navy. *When you consider those marks, his lack of remorse, and the magnitude—the seriousness of these offenses, he must be discharged from the United States Navy. The appropriate discharge in this case is a dishonorable discharge.*

The Government would further argue that the individual is a dangerous felon. There's been theories set forth for how you determine a sentence. Those—those theories are: specific deterrence, stopping the—the accused from committing another type act; general deterrence, stopping another individual from acting the way he has; protection of the public, and that's what the Government has argued for here today.

We cannot allow an individual such as this to be about among the public. He's not your ordinary rapist that hides behind a tree and comes out and stops a woman. He stalks them. He stalked [Ms.D]. He stalked [Ms.V]. And tricked them. The public must be protected. Because of that [turning towards the accused while speaking] the accused should be awarded a healthy dose of confinement.

The judge will later instruct you that you can confine him for the rest of his natural life. And doesn't the seriousness and the magnitude of these offenses call for something like that? He's not said he's sorry. You heard him testify yest—the day before yesterday. Rape is a crime of violence. We have to protect the people—we have to protect the public.

This individual cannot be allowed to remain in the Navy. Cannot be allowed to walk the streets. And we shou—the Navy certainly doesn't want to pay him if he's not going to be in the Navy. He must suffer total forfeitures and he must suffer the embarrassment and the reduction in rate to paygrade E–1. We must put a stop to this.

*We must consider not only the accused, but consider the two women involved in this case. What has he done to them? And what has he said about that? He said absolutely nothing.*

There's another theory regarding sentencing. It says the sentence should not only—the punishment should not only fit the offense, but it should fit the person. And this is truly a case where a harsh punishment would fit that person.

Thank you.

(Emphasis added.)

We acknowledge a wealth of decisions from the Courts of Military Review on this issue,[2] and we are aware of the difficulty

2. *United States v. Carroll,* 34 MJ 843 (ACMR 1992) (trial counsel's comments at sentencing

and uncertainty of this area of military law.[3] As was stated so catchingly by Senior Judge Kastl of the United States Air Force Court of Military Review:

> However, we caution trial counsel ... [as to] how difficult this area of the law can be. There are still issues to be resolved in this arena.... With the precedents far from settled, only the bravest of advocacy acrobats ought to tempt fate. (They do so at their own peril, for we guarantee no safety net against reversal).

*United States v. Ryder*, 31 MJ 718 (1990) (citations omitted).

■ We are not inclined, however, to issue any black letter edict regarding the limitations of trial counsel's comments. We decline for two reasons. First, the accused has sitting beside him or her an advocate. It is the duty of this advocate to ferret out improper argument, object thereto, and seek corrective action in the nature of instructions or a mistrial if the argument is so outlandish that it is incapable of being cured. The trial defense lawyer is "no potted plant." (Purloined from Brendan Sullivan, Esq.)

Second, and equally important, it is impossible to foresee the myriad of possibilities which may arise in a particular trial and make the lack of remorse an issue in sentencing. Indeed, it is even difficult to define "remorse." *Webster's Ninth New Collegiate Dictionary* 996 (1991) defines it as "a gnawing distress arising from a sense of guilt for past wrongs." *Webster's Collegiate Thesaurus* 614 (1988) lists numerous synonyms, the use of which depends on the message one is trying to convey by use of the word "remorse." In a criminal case, for example, the accused may be remorseful in the sense that he is truly sorry that he committed the offense, shamed by his conduct, or regrets the pain and damage he has inflicted upon the victim. On the other hand, he may only be sorry that he was caught, convicted, and must suffer punishment. The former may have rehabilitative potential based upon his attitude; the latter probably does not.

Because of the variety of situations where this type of evidence is introduced in the trial, it is extraordinarily difficult to establish rules which will apply in each

on the accused's lack of remorse, if error at all, held harmless and not plain error); *United States v. Ryder*, 31 MJ 718, 720 (AFCMR 1990) (no error where trial counsel said, without defense objection, that the accused "never accepted responsibility for his" actions); *United States v. Turner*, 30 MJ 1183, 1187 (AFCMR 1990) (trial counsel's sentencing argument that the accused could "not be considered for rehabilitation because: '... He can't admit what he did' " held prejudicial error); *United States v. Minaya*, 30 MJ 1179, 1182 (AFCMR 1990) (no prejudice where trial counsel asked members to "give strong consideration to the fact that the appellant had not said I'm sorry' during his unsworn statement"); *United States v. Gibson*, 30 MJ 1138, 1139 (AFCMR) (trial counsel's sentencing argument not held error where it noted the accused's "failure to express contrition," without objection), *pet. denied*, 32 MJ 247 (1990); *United States v. Jones*, 30 MJ 898, 901 (AFCMR 1990) (trial counsel's argument held plain error when saying that the accused "should not be considered for rehabilitation because he had failed to admit his guilt"); *United States v. Chaves*, 28 MJ 691, 692 (AFCMR 1989) (prejudicial error for judge to instruct members to use appellant's "lack of remorse" as a sentencing factor); *United States v. Kupchik*, 6 MJ 766, 770 (ACMR 1978) (permitted trial counsel to mention an accused's lack of remorse during sentencing argument).

3. Senior Judge Murdock of the Air Force Court of Military Review made an interesting observation in his separate opinion and set forth an etiquette, if you will, regarding an argument addressing a lack of remorse. *See United States v. Gibson, supra.* He notes the ungamely tactic of being the first advocate to delve into the "inner motivations of the accused," commenting:

> In my view, the prosecutor should present an argument based on the facts and the law, and attempt to persuade the factfinder to the result he desires. *By being the first advocate to delve into the inner motivations of the accused, the prosecutor in this case went too far. Perhaps the prosecutor's comment would be all right if the accused had professed remorse, and the prosecutor wished to counter that by pointing to the shallowness of the accused's statement.* But, to start from scratch and point out that the accused has not said something implies that the accused should have said something or suffer the consequences.

30 MJ at 1140 (emphasis added).

case. However, we do have some guiding, fundamental principles.

A servicemember is presumed innocent and has the right to plead not guilty to the criminal charges against him or her. U.S. Const. amend. V and VI; *see United States v. Care,* 18 USCMA 535, 40 CMR 247 (1969). Accordingly, a sentencing argument by trial counsel which comments upon an accused's exercise of his or her constitutionally protected rights is "beyond the bounds of fair comment." *See United States v. Johnson,* 1 MJ at 215 (emphasis omitted); *United States v. Olson,* 7 USCMA 242, 22 CMR 32 (1956).

Generally, a guilty plea is a positive first step to rehabilitation and may be considered as a mitigating factor at sentencing. RCM 1001(f)(1), Manual for Courts-Martial, United States, 1984; *see* n.4, *infra.* However, a plea of not guilty, standing alone, does not conversely carry with it a negative implication, capable of aggravating a sentence.[4] *United States v. Johnson,* 1 MJ at 215. This is particularly true where an accused also exercises his or her rights to remain silent.

If "a proper foundation" is laid, "an accused's recalcitrance in refusing to admit his guilt after findings is, in a proper case, an appropriate factor for the members to consider in their sentencing deliberation on his rehabilitation potential." *See United States v. Holt,* 33 MJ 400, 408 (CMA 1991), *citing United States v. Warren,* 13 MJ 278 (CMA 1982); *see also* RCM 1001(b)(5). It may also be relevant as victim-impact evidence. *United States v. Holt, supra* at 408.

As a general rule, the predicate foundation is that an accused has either testified or has made an unsworn statement and has either expressed no remorse or his expressions of remorse can be arguably construed as being shallow, artificial, or contrived. *United States v. Gibson,* 30 MJ 1138 (AFCMR), *pet. denied,* 32 MJ 247 (1990); *United States v. Allen,* 29 MJ 1002 (AFCMR 1990). There may be other evidence in the record which gives rise to the inference that an accused is not remorseful. However, the inference may not be drawn from his failure to testify or from his pleas of not guilty.

Furthermore, an accused's mendacity may be considered by a sentencing authority in arriving at a just sentence. *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) (sentencing judge could properly consider a defendant's false testimony, as observed by the judge at trial, when considering an accused's rehabilitative potential and fixing sentence.) However, consideration of an accused's false testimony is limited to the determination of rehabilitative potential. *United States v. Warren,* 13 MJ at 285, citing *Grayson.*

Turning to the instant case, we first observe that no objection to trial counsel's argument was made at trial; thus, the military judge had no opportunity to address the issue. Under those circumstances we will not find error as to the sentence unless we conclude that the argument constituted plain error and materially prejudiced the rights of appellant. Art. 59(a), UCMJ, 10 USC § 859(a); *United States v. Fisher,* 21 MJ 327 (CMA 1986).

Thus the question is whether trial counsel's argument can be construed as asking the court members to draw a nega-

4. The advent of the Federal Sentencing Guidelines reflects the same view that lack of remorse by an accused should not result in an aggravating factor. Rather, the Guidelines reward the "acceptance of responsibility." The Sentencing Guidelines currently call for a reduction of two offense levels where an accused has "demonstrate[d] a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." United States Sentencing Commission Guidelines Manual, § 3E1.1(a) at 259 (1991). Proposed amendments to the Guidelines would reward such conduct with an extra level of reduction if a defendant meets set standards of cooperation with law enforcement authorities and has an offense level of 16 or greater. *See* 51 CrLRptr 2039 (1992). However, the Guidelines mention nothing about an accused's failure to accept responsibility, and specifically, and more importantly for this case, do not suggest an upward departure when no remorse is shown.

tive inference from the exercise of the well-known right of an accused not to offer any evidence in sentencing. We think not. First, trial counsel was entitled, and under ethical obligations was required, to zealously represent the Government and to offer strong and vigorous argument at sentencing. Rule 1.3, ABA Model Rules of Professional Responsibility (1989). *See* Canon 7, ABA Model Code of Professional Responsibility (1980). Moreover, trial counsel may argue "in such manner as he deems most persuasive, in favor of the severest punishment authorized by the law," as long as the argument is fair and reasonably based upon the evidence. *United States v. Olson,* 7 USCMA at 245, 22 CMR at 35, *quoting Miller v. Commonwealth,* 236 Ky. 448, 33 S.W.2d 590, 591 (1930). But the right to a vigorous argument does not permit trial counsel to comment upon an accused's exercise of his right to remain silent and offer no testimony.

In evaluating the argument in this case, it must be considered that appellant testified on the merits of the case and denied any wrongdoing whatsoever. He specifically denied choking, hitting, slamming, grabbing, threatening, striking, pushing, shoving, forcing, attempting to rape, or raping anyone. Thus, read in that context, trial counsel's argument—that

> [t]he accused showed his true colors and mettle when he got on the stand yesterday and told you the story he told you. It's apparent that he's not ready to accept responsibility or accountability for his actions

—was not a comment on appellant's failure to testify in the sentencing procedure, on his pleas of not guilty, or on his subsequent testimony denying guilt on the merits. Rather, it was an observation of appellant's demeanor or mendacious trial testimony. In any event, no objection to the statement was made at trial.

The second comment, "When you consider ... his lack of remorse," again refers to his trial testimony and was made in the context of the accused's lack of rehabilitative potential.

It is possible to construe the last comment, "We must consider not only the accused, but consider the two women involved in this case. What has he done to them? And what has he said about that? He said absolutely nothing," as an unfair comment on the fact that appellant did not take the stand and apologize. However, the comment can also be construed as victim-impact argument. *See United States v. Holt, supra.* Because defense counsel did not object to the comment, we will never know what trial counsel intended.

We must emphasize that trial counsel can only argue that an accused lacks remorse when that inference can be fairly derived from evidence before the court-martial. It can not arise solely from an accused's exercise of his or her rights. In any event, even if we construe trial counsel's comments as being improper, they were not so directly focused on appellant's exercise of his rights as to constitute reversible error in this case.

## II

### *Multiplicity*

We specified the following issue:

WHETHER ADDITIONAL CHARGES II (EXTORTION OF MS. D) AND III (ASSAULT OF MS. D WITH INTENT TO COMMIT RAPE) ARE MULTIPLICIOUS WITH ADDITIONAL CHARGE I (ATTEMPTED RAPE OF MS. D): *SEE UNITED STATES v. RUSHING,* 11 MJ 95, 98 (CMA 1981).[5]

5. The charges read as follows:

Additional Charge I: Violation of the UCMJ, Article 80

Specification: In that [appellant], on active duty, Naval Support Activity, New Orleans, Louisiana, did, at the Quality Inn, Opelousas, Louisiana, on or about 3 July 1988, attempt to rape [Ms. D].

Additional Charge II: Violation of the UCMJ, Article 127

Specification: In that [appellant], on active duty, Naval Support Activity, New Orleans, Louisiana, did, at the Quality Inn, Opelousas, Louisiana, on or about 3 July 1988, with intent unlawfully to obtain an advantage, to wit sexual intercourse with [Ms. D], communicate

The facts of the case as digested in the opinion of the court below are as follows:

> As to the charges alleging attempted rape of [Ms. D], extortion by communicating a threat to kill [Ms. D], and assault with intent to commit rape of [Ms. D], the appellant and victim, D give radically different accounts of what happened in a hotel room that night. Appellant had met and dated D previously. Rebuffed in his prior attempts to consummate the relationship, he asked D to eat with him, and picked her up at her house. She left with him, and her account depicts a harrowing assault inside the car, being dragged up an outside staircase at a hotel, and sexually assaulted in the room. The physical evidence within the room shows damaged venetian blinds and buttons from appellant's shirt on the floor that D apparently ripped off during her struggle. D managed to escape from the hotel room, and was seen by the hotel desk clerk crying hysterically in the lobby. (R.278). D reported what had happened to the police immediately, but by then appellant had fled. D's account of that night's events is substantially corroborated by other testimony and physical evidence, including bruises she suffered on the cheek, both arms, and neck. Appellant's testimony is not credible in light of the physical evidence of a struggle within the room, the bruises suffered by D seen the next day by another witness, and the testimony of the hotel clerk concerning D's hysteria immediately following the alleged assault. Appellant's version of the events and his explanation that D was lying about them because she did not want her mother to know of her sexual activity is not credible. We are convinced of appellant's guilt beyond a reasonable doubt. Appellant was properly found guilty of these charges and their accompanying specifications.

Unpub. op. at 2.

Appellant argues that, based upon these facts, he can be convicted only of attempted rape.

█ The Government concedes that Additional Charge III (assault with intent to commit rape) is multiplicious for findings purposes with Additional Charge I (attempted rape). Because assault with intent to commit rape is in this case the attempted rape, we agree. *See United States v. Gibson,* 11 MJ 435 (CMA 1981). They are also both lesser-included offenses of the greater offense of rape. *See* para. 45(d)(1), Part IV, Manual, *supra.* We conclude that the conviction for the assault offense cannot stand.

█ However, the same does not hold true for Additional Charge II, which alleges the crime of extortion. The evidence, viewed in a light most favorable to the Government, *United States v. Seger,* 25 MJ 420, 421 (CMA 1988), shows that the extortion took place after the attempted rape and was a footnote to appellant's criminal behavior that night. According to Mrs. D's testimony, after appellant failed to have consensual sex with her, she attempted to leave the room, whereupon appellant told Mrs. D, "Here, bitch just get out," and then said "But ... remember ... I know where you stay ... I'll kill your children"; and "I'll kill you before you get to the door."

In *United States v. Hicks,* 24 MJ 3 (CMA), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987), we held the offense of extortion "separate for all purposes" from the offense of rape in that case. *Id.* at 10. We see no need to depart from this holding where an attempted rape occurred rather than a completed rape.

to [Ms. D] a threat to kill [Ms. D], and her children.
Additional Charge III: Violation of the UCMJ, Article 134
Specification: In that [appellant], on active duty, Naval Support Activity, New Orleans, Louisiana, did, at the Quality Inn, Opelousas, Louisiana, on or about 3 July 1988, with intent to commit rape, commit an assault upon [Ms. D] by beating [Ms. D] about the face, and body with his fists, and choking [Ms. D] by placing his hands around her neck and applying severe pressure.

Even if the extortion amounted to the constructive force of rape, it is still separate. *See* para. 45c(1)(b). The offenses of attempted rape and extortion each have elements not contained within the other, and neither is a lesser-included offense of the other. Paras. 4b and 53b, Part IV, Manual, *supra.* Therefore, the offense of extortion stands as a separate and distinct offense from attempted rape and is not multiplicious for findings.

Even though all of the charges were treated as multiplicious for sentencing, we believe it is possible that appellant was prejudiced as to sentence, so the Court of Military Review should reassess the sentence in light of the Government's concession of error as to Additional Charge III.

The decision of the United States Navy–Marine Corps Court of Military Review is reversed as to Additional Charge III and its specification and the sentence. The findings of guilty thereon are set aside, and that Charge and its specification are dismissed. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for reassessment of the sentence based on the remaining findings of guilty.

Chief Judge SULLIVAN and Judges CRAWFORD and WISS, concur.

GIERKE, Judge (concurring in part and dissenting in part):

I agree with Judge Cox's disposition of the issues relating to trial counsel's sentencing argument and the specified issue regarding multiplicity for findings. I disagree with his conclusion that appellant was prejudiced in sentencing and is entitled to a sentence reassessment.

Appellant remains convicted of three serious offenses: rape, attempted rape, and extortion. Dismissal of the multiplicious specification does not affect the maximum confinement, which is life imprisonment. Para. 45e(1), Part IV, Manual for Courts–Martial, United States, 1984. *See* RCM 1004(c)(9), Manual, *supra.* The rape charge was referred as noncapital. The military judge correctly instructed the court members regarding the maximum punishment and instructed them to consider the multiplicious offenses as a single offense for sentencing. Under the circumstances, there was no reasonable probability of prejudice as to sentence. *See United States v. Hubbard,* 28 MJ 27, 34 (CMA) (dismissal of multiplicious unpremeditated-murder specification did not warrant sentence relief), *cert. denied,* 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 101 (1989); *United States v. Ramirez,* 21 MJ 353, 355 (CMA) (dismissal of multiplicious indecent-exposure specification did not warrant sentence relief), *cert. denied,* 479 U.S. 831, 107 S.Ct. 118, 93 L.Ed.2d 65 (1986).