# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Justin D. WEDDLE
## Quartermaster Third Class (E-4), U.S. Coast Guard

## CGCMS 24245

## Docket No. 1184

## 2 December 2004

Special Court-Martial convened by Commanding Officer, Coast Guard Cutter DECISIVE (WMEC 629). Tried at Naval Air Station Pensacola, Florida, on 11-13 December 2002.

| | |
|---|---|
| Military Judge: | CDR Bradley Mozee, USCG |
| Trial Counsel: | LT Patrick M. Flynn, USCG |
| Detailed Defense Counsel: | LT Brian T. Maye, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT Sandra J. Miracle, USCG |

**BEFORE**
**PANEL THREE**
**BAUM, KANTOR, & McCLELLAND**
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by a special court-martial composed of officer and enlisted members. Despite his pleas of not guilty, he was convicted of three specifications of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ). The members sentenced Appellant to a bad-conduct discharge, confinement for six months, forfeitures of $737 pay per month for six months, and reduction to E-1. The Convening Authority approved the sentence as adjudged. Before this Court, Appellant has assigned three errors.

In his first assignment, Appellant contends that the evidence was not factually sufficient to sustain a charge of assault consummated by a battery. We disagree.

Applying the standard from *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987), the evidence of record convinces us of Appellant's guilt beyond a reasonable doubt. We also reject Appellant's second assignment of error in which he contends that the military judge erred in failing to instruct the members *sua sponte* to disregard certain portions of trial counsel's closing argument which Appellant contends were improper and included an erroneous statement of the law. During cross-examination of Appellant, trial counsel tried to question him as to why the victims would fabricate their account of Appellant's cutting them with his knife. The military judge sustained an objection by Appellant and instructed the members that they could not consider the answers for any purpose whatsoever. Later in trial counsel's closing argument, he revisited the subject by contending that the victims had no reason to fabricate their testimony, that they had already received administrative determinations of alcohol incidents and that there was no other trouble the victims could get into. Appellant did not object to this argument; therefore, the issue whether the military judge should have instructed the members to disregard the statements made by trial counsel is waived, unless there is plain error. We do not find plain error in these facts.

In his third assignment, Appellant contends that the trial counsel made additional improper argument on sentencing to the effect that Appellant had not sincerely accepted responsibility for his acts and that "[i]f you don't accept responsibility, you need to be punished." R. at 464. Appellant did not object to the prosecution's sentencing argument at trial, but asks this Court now to find that it was error for the judge not to instruct the members at the conclusion of trial counsel's argument that failure of Appellant to admit guilt, or to take responsibility, or show remorse, if perceived, cannot be considered in aggravation. Appellant also submits that there was no proper foundation for trial counsel's argument that Appellant's refusing to admit his guilt was a factor bearing on rehabilitative potential that the members could consider in sentencing. Moreover, Appellant contends that trial counsel went beyond that argument and improperly couched the asserted lack of genuine remorse as a matter in aggravation rather than something to be considered with respect to rehabilitative potential. Even if trial counsel's argument

was error the statement must amount to plain error, since failing to object constitutes waiver, absent plain error. We will address this third assignment of error.

## Facts

As indicated earlier, Appellant pled not guilty. He took the stand in his own defense and testified that he did not cut two individuals, as alleged, and did not assault a third person. He was convicted nevertheless. At sentencing, he made the following unsworn statement:

> Commander Mozee, Members of the Panel, Mr. Flynn, Mr. Maye, and everybody else here, I would like to start out by apologizing for the part I played in bringing you all here today. I'm sure you would all rather be somewhere else right now. I know I would.
>
> First, I would like to say that I understand that everything that has been said and done in this courtroom for the past couple of days has been done in the application of everyone's duties, and I respect that. It isn't my place to question the judgment of the Court. It is now my duty to serve my sentence with honor in the best way I know how.
>
> I freely acknowledge that what has happened is that I am responsible for what has happened, and I accept that. I can only beg and pray that the Court will understand that I never wanted to hurt anyone. Excuse me. Sorry. I'm all right.
>
> I wanted to share something about myself that I had to keep hidden for fear, for fear of something like this happening. In the past, I've cut myself for many reasons, primarily as a physical expression of pain that I feel inside.
>
> I chose to share that expression with those two young men because I thought they would understand. I thought that I had found kindred spirits, and, then, perhaps, with them, the pain would recede for a time and give me some rest. I was wrong, and I'm sorry.

> If I could undo what has been done, I would, but I can't. I can only say that what happened was a stupid mistake, and it never should have happened. I have done a great deal of reflecting over the past four months. I've realized that what happened -- my actions have wronged many people, not just the victims, but also my Command for the imposition that this Court Martial has caused; my Chief, who I've always admired and respected, for not being there when I was needed; to my mother, for causing her to see her son go to a Court Martial, and everyone here for having to participate in this proceedings.
>
> As I said, I cannot change what has already happened. I can only learn from my mistakes, learn from the experience, and try not to make the same mistakes in the future. I will try to be a better man, and I pray that I never hurt anyone like this ever again, not just for myself, but for everyone in my life.
>
> I can honestly say that the Coast Guard changed my life. I will never regret my enlistment, and it saddens me deeply that I will see my tour come to a premature end. I've had some rough times during my service, but in no way do I blame the Coast Guard for these problems.
>
> Finally, I can only say that I am sorry for the trouble I've cause[d] to the victims and to everyone else involved. Thank you for hearing me out. Thank you.

R. at 454-456.

Thereafter, trial counsel made the following argument with regard to an appropriate sentence:

> TRIAL COUNSEL: Members, your job here today, unlike yesterday, is to decide what [is] the appropriate punishment for Petty Officer Weddle's assault on Sims, Clark, and Haider.
>
> Now, the Military Judge is going to instruct you on the principles upon which sentencing is based. One of those principles is the rehabilitation of the Accused. And the Defense is probably going to tell you that Petty Officer Weddle is sorry.

He's sorry. He realizes he was wrong now, and he doesn't need any more punishment to be rehabilitated. But, remember this, today, he made an unsworn statement. And, in that statement, while he expressed remorse, he said he was sorry for the "Part I played."

He said he was sorry that we had to be here. He said he accepted responsibility in some general sense, but he never said, "I stabbed Seaman Clark and Seaman Sims, and I held a knife to the throat of Petty Officer Haider."

He's sorry? He's sorry he got convicted. Those were not tears of genuine remorse. Those were the tears of someone who is afraid of what you're about to do to him. He stabbed two of his shipmates, and he held the knife to the throat of the third. You can never trust him again.

He can't stay in the Coast Guard. He can't. He needs to be separated with a bad conduct discharge. Why? Because bad conduct deserves a bad conduct discharge and that's pretty bad conduct.

When you look at Defense Exhibit Delta, when you look on the first page, you'll see he didn't even admit to his doctor that he had done anything wrong.

You'll see that he told his doctor he cut himself and made a sharp knife available for other Coast Guard Members to cut themselves. He's not being honest.

He wasn't honest with you yesterday. Yesterday, he sat right here and told you, "I didn't do it. I didn't do it. I didn't do it."

Where was the remorse? Where's the acceptance of responsibility? Oh, you didn't believe me? I guess I really did do it. Yeah. I'm really sorry. I'm really sorry. But he's still not saying he did it.

There's no remorse. There's no genuine remorse. Then look at the character of his prior service. When you look [at] Prosecution Exhibit 4, you'll see four page sevens as you've already seen, I should say, four page sevens, all negative, two for alcohol incidents; then the final page refers to another assault.

DEFENSE COUNSEL: I'm sorry, sir. It's an alleged assault.

TRIAL COUNSEL: It's an alleged assault where Petty Officer Weddle also claims he blacked out and can't remember doing it.

Where is the acceptance of responsibility? If you don't accept responsibility, you can't be given another chance. If you don't accept responsibility, you need to be punished.

There was lots of testimony today about Petty Officer Weddle and Petty Officer Weddle's upbringing. What about Seaman Clark and Seaman Sims and BM3 Haider? Nobody mentioned them today.

They're the victims. His scars are self-inflicted that he's been carrying around. Sims and Clark now have a lifelong reminder of the night Petty Officer Weddle sliced them up. And, yet, when Petty Officer Weddle gave his unsworn statement, he apologized to everyone here, and he said, "It's not his job to question the judgment of the Court," but he didn't say he thought you were right. He's still not admitting guilt.

Then, at the very end, almost as an afterthought, he put in, "Oh, yeah. I'm sorry for the victims, too." They should have been the first people who he apologized to. And he told you he's sorry that y'all had to come here because he would rather be somewhere else; of course, he would.

Think of Seaman Sims, Seaman Clark, and Petty Officer Haider. They certainly wanted to be somewhere else today, and they were here because of his actions in which he showed no remorse.

He needs to be separated from the Coast Guard with [a] bad conduct discharge. He needs some further confinement on top of the 118 days he's already served. The maximum you can adjudge is a year.

The Government is not even going to ask for the maximum. Give him nine months' confinement. The Judge will tell you he'll get credit for what he's already served. Give him nine months' confinement; separate him with a bad conduct discharge.

Thank you.

R. at 461-465.

**Was It Error For Trial Counsel To Argue Lack Of Remorse At Sentencing?**

Appellant raised no objection to the foregoing argument at trial, but, citing *United States v. Johnson*, 1 M. J. 213, 215 (C.M.A. 1975), now contends before this Court that trial counsel's argument crossed the bounds of fair comment. Appellant notes from *Johnson* that, while a guilty plea is a positive first step towards rehabilitation, properly considered in mitigation at sentencing, a not-guilty plea, standing alone, does not conversely carry with it a negative implication capable of aggravating a sentence. *Johnson*, 1 M.J. at 215. Appellant acknowledges, however, that our higher Court recognized that where a proper foundation is laid, an accused's refusal to admit guilt after findings may be considered at sentencing as bearing on rehabilitation potential. *United States v. Edwards*, 35 M.J. 351, 355 (C.M.A. 1992). In *Edwards*, the Court went on to say, "As a general rule, the predicate foundation is that an accused has either testified or has made an unsworn statement and has either expressed no remorse or his expressions of remorse can be arguably construed as being shallow, artificial, or contrived." *Edwards*, 35 M.J. at 355 (citing *United States v. Gibson*, 30 M.J. 1138 (A.F.C.M.R.), *pet. denied,* 32 M.J. 247 (1990); *United States v. Allen*, 29 M.J. 1002 (A.F.C.M.R. 1990)). Appellant submits that this foundation requirement for trial counsel's argument was not satisfied, that Appellant expressed remorse in an expansive sincere manner, which included crying during his unsworn statement. Appellant asserts that, without evidence in the record to the contrary, his apologies and acceptance of responsibility cannot be construed as other than genuine. Moreover, according to Appellant, the trial counsel compounded his argument error by shifting the focus from lack of rehabilitation potential to one of aggravation based on trial counsel's contention that Appellant had not expressed responsibility specifically for stabbing and assaulting his shipmates, and then argued, "If you don't accept responsibility you need to be punished." R. at 464. Appellant asserts that this statement changed the whole thrust of trial counsel's argument to one of treating failure to acknowledge responsibility as a matter in aggravation rather than something bearing on rehabilitation potential. The latter is permitted with the proper foundation; the former is not. If Appellant is correct that a proper foundation for arguing lack of rehabilitative potential was not established and that, even with a foundation, an argument

in aggravation was not proper, then trial counsel committed error.   Accordingly, Appellant contends that the military judge should have given a curative instruction to the members and without such an instruction a rehearing on sentence is needed.  Again, however, where Appellant made no objection and did not request such a curative instruction, we are inclined to look for plain error as a basis for providing the relief requested at this level, rather than simple error.

**Was It Plain Error For The Military Judge Not To Instruct The Members To Disregard Certain Portions Of Trial Counsel's Argument On Sentence?**

In assessing whether plain error was committed, it is worthwhile to review anew whatever instruction in this area may be found in *United States v. Edwards*, 35 M.J. 351 (C.M.A. 1992).  While the Court in that case was not disposed to issue "any black letter edict regarding the limitations of trial counsel's comments," 35 M.J. at 354, it did express "some guiding, fundamental principles." *Id*. at 355.  For example, as already indicated, "a sentencing argument by trial counsel which comments upon an accused's exercise of his or her constitutionally protected rights is 'beyond the bounds of fair comment.'" *Id*. at 355 (citing *United States v. Johnson*, 1 M.J. 213, 215 (C.M.A. 1975)).  "There may be other evidence in the record which gives rise to the inference that an accused is not remorseful.  However, the inference may not be drawn from his failure to testify or from his pleas of not guilty." *Id*. at 355.  While Appellant pled not guilty, he did not remain silent, testifying, instead, on the merits.  Trial counsel did not comment negatively on Appellant's plea of not guilty, but he did have things to say about Appellant's trial testimony and a pretrial statement to his doctor.  Trial counsel told the court members:

> When you look at Defense Exhibit Delta, when you look on the first page, you'll see he didn't even admit to his doctor that he had done anything wrong.
>
> You'll see that he told his doctor he cut himself and made a sharp knife available for other Coast Guard Members to cut themselves. He's not being honest.
>
> He wasn't honest with you yesterday.  Yesterday, he sat right here and told you, "I didn't do it.  I didn't do it.  I didn't do it."

> Where was the remorse? Where's the acceptance of responsibility? Oh, you didn't believe me? I guess I really did do it. Yeah. I'm really sorry. I'm really sorry. But he's still not saying he did it.

R. at 463. In *Edwards*, the Court stated:

> an accused's mendacity may be considered by a sentencing authority in arriving at a just sentence. *United States v. Grayson*, 438 U.S. 41, 98 S. Ct. 2610, 57 L.Ed.2d 582 (1978) (sentencing judge could properly consider a defendant's false testimony, as observed by the judge at trial, when considering an accused's rehabilitative potential and fixing sentence.) However, consideration of an accused's false testimony is limited to the determination of rehabilitative potential. *United States v. Warren*, 13 M.J. at 285, citing *Grayson*.

*Edwards*, 35 M.J. at 355.

As can be seen, once a trial counsel chooses to mine this area for argument, it is fraught with potentially dangerous consequences. In this regard, the quote in *Edwards* from Senior Judge Kastl of the United States Air Force Court of Military Review bears repeating:

> [W]e caution trial counsel…[as to] how difficult this area of the law can be. There are still issues to be resolved in this arena…. With precedents far from settled, only the bravest of advocacy acrobats ought to tempt fate. (They do so at their own peril, for we guarantee no safety net against reversal).

35 M.J. at 354. Notwithstanding this advice, the Court in *Edwards* did not issue any black letter edict regarding the limitations of trial counsel's comments, in part because an accused has an advocate with a duty "to ferret out improper argument, object thereto, and seek corrective action in the nature of instructions or a mistrial if the argument is so outlandish that it is incapable of being cured." *Id*. at 354. By not objecting at trial, the defense counsel obviously did not find trial counsel's argument such that a curative instruction was needed, much less a mistrial, possibly because the above quoted portion arguably can be seen as constituting permitted comment on Appellant's mendacity, just

as the Court in *Edwards* found with respect to the following: "[t]he accused showed his true colors and mettle when he got on the stand yesterday and told you the story he told you. It's apparent that he's not ready to accept responsibility or accountability for his actions." *Id*. at 356. That argument was deemed "not a comment on appellant's failure to testify in the sentencing procedure, on his pleas of not guilty, or on his subsequent testimony denying guilt on the merits. Rather, it was an observation of appellant's demeanor or mendacious trial testimony." *Id*. at 356. In so finding, the Court was unable to conclude that plain error was committed. We, too, find trial counsel's similar argument in the instant case did not rise to the level of plain error.

Trial counsel's argument that followed presents more of a problem, however: "Where is the acceptance of responsibility? If you don't accept responsibility, you can't be given another chance. *If you don't accept responsibility you need to be punished.*" (emphasis added) R. at 464. This argument is not necessarily a statement that one should be punished for the act of failing to accept responsibility. It can be considered a statement that the crime in the first instance deserves punishment and if you don't accept responsibility you forfeit the consideration of rehabilitative potential. That said, however, trial counsel's contention may have gone beyond an argument concerning rehabilitative potential to which it should have been limited. All of this could have been cleared up at trial if defense counsel had objected and asked for clarifying action by the military judge. Obviously it did not strike trial defense counsel as egregious enough to warrant objection, and, absent any objection by Appellant, it certainly is not serious enough to constitute plain error. Accordingly, we reject the third assigned error. Additionally, with respect to that assignment, as well as the other errors assigned in this case, we see no reason to disregard the plain error threshold and apply our plenary authority, as articulated in *United States v. Claxton,* 32 M.J. 159, 162 (C.M.A. 1991), in order to do justice. In so acting, however, we caution trial counsel to exercise great care when alluding to an accused's failure to accept responsibility and take to heart the words of former Senior Judge Kastl of the Air Force, bearing in mind the duty to protect the record. Also, trial defense counsel must be ever alert to prosecution argument that can be construed as objectionable and take appropriate action at the trial level. Otherwise, any

error committed may be deemed waived.  Finally, we would be remiss if we failed to mention that the military judge can eliminate issues such as this one by *sua sponte* giving clarifying instructions.  Even when such an instruction is not legally required, an alert judge can have a positive effect by ensuring that the members do not get the wrong idea, and at the same time ensuring a clean record.

## Conclusion

We have reviewed the record in accordance with Article 66, UCMJ.  Upon such review, the findings of guilty and sentence are deemed to be correct in law and fact and should be approved.  Accordingly, the findings and sentence as approved below are affirmed.

Judge KANTOR and Judge McCLELLAND concur.



For the Court,

Roy Shannon Jr.
Clerk of the Court