# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CELTNIEKS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major GARY S. OSCAR**
**United States Army, Appellant**

ARMY 20140445

Headquarters, 21st Theater Sustainment Command
R. Peter Masterton, Military Judge (arraignment)
David H. Robertson, Military Judge (motions & trial)
Colonel Jonathan A. Kent, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Lieutenant Colonel Jonathan F. Potter, JA (on brief).

For Appellee:  Lieutenant Colonel A.G. Courie III, JA; Major Scott L. Goble, JA; Captain John Gardella, JA (on brief).

18 November 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of ten specifications of rape of a child, eight specifications of sexual contact, four specifications of lewd acts, two specifications of indecent liberties, one specification of indecent conduct, and three specifications of sodomy in violation of Articles 120, 120b, and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 920b, 925 (2000 & Supp. V 2006; 2006; 2006 & Supp. II 2009; 2006 & Supp. III 2010; 2006 & Supp. IV 2011; 2006 & Supp. V 2012)  [hereinafter UCMJ].  Additionally, the panel convicted appellant of one specification of indecent liberties with a child and three specifications of indecent acts with a child in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000 & Supp. V 2006).  The panel sentenced appellant to a dismissal, confinement for life without the eligibility of

parole, and to forfeit all pay and allowances. The convening authority approved the sentence as adjudged, but waived automatic forfeitures for six months.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises three assignment of error, two of which merit discussion but no relief. Appellant personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) that we find, after due consideration, to be without merit.[*]

## BACKGROUND

Appellant and his wife, Ms. JO, had six children. They had three girls: Ms. CO, Ms. SMO, and Ms. MO. Over a period of five years, Ms. CO alleged that appellant repeatedly sexually abused her. Ms. SMO and Ms. MO also alleged sexual abuse. Appellant was charged and convicted based on these allegations.

On 9 December 2012, appellant sodomized Ms. CO. Appellant stopped briefly because Ms. CO defecated. After he gave her baby wipes to clean herself up, appellant resumed sodomizing her and then made her give him oral sex. That same day, Ms. CO told her mother, Ms. JO, that appellant raped her repeatedly over the previous five years. Ms. CO came forward because she believed appellant was also abusing her younger sister.

Ms. JO immediately reported this to police. The German Police initiated an investigation as the events occurred at an off-post residence in Germany. Jurisdiction in the case was then given to the United States Army and the United States Army Criminal Investigation Command (CID) began investigating. Ms. CO

---

[*] In his first personally assigned error, appellant asserts his trial defense counsel were ineffective because they "fail[ed] to present evidence which would have significantly undermined the prosecution's case." Appellant submitted no additional affidavits, unsworn declarations made under penalty of perjury, or any signed statements directly supporting his specific claim of ineffective assistance. *See United States v. Axtell*, 72 M.J. 662, 665-66 (Army Ct. Crim. App. 2013). *See also United States v. Gunderman*, 67 M.J. 683, 684 (Army Ct. Crim. App. 2009), and *United States v. Ellis*, 47 M.J. 20, 22 (C.A.A.F. 1997). Under the circumstances of this case, we see no need to order affidavits from counsel or a fact-finding hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). The facts in appellant's allegations—even if true—"would not result in relief." *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Furthermore, "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of [appellant's allegations]." *Id*. Applying the first, fourth, and fifth *Ginn* principles to appellant's unsworn submission, we reject appellant's ineffective assistance claim. *See Id*.

went to the hospital for medical treatment and a sexual assault forensic evidence (SAFE) kit was collected.  Ms. CO's clothes, including her bra, were collected.  CID conducted a search of the house and collected sheets from the master bedroom, baby wipes from the trash, and a towel from appellant's wall locker.  Appellant's semen and deoxyribonucleic acid (DNA) were found on the items collected.  The baby wipes had a strong fecal odor and one of the wipes contained appellant's semen mixed with Ms. CO's DNA.  The bed sheets, towel, and Ms. CO's bra contained a mixture of a semen DNA profile matching appellant and a non-semen DNA profile matching Ms. CO.  Ms. CO's anal swab also revealed semen DNA with appellant included as a contributor.

At the time of trial, Ms. CO was fourteen, Ms. SMO was ten, and Ms. MO was eight-years-old.  All three children testified in detail about being sexually abused by appellant.  The defense theory of the case was that appellant's sons were sexually abusing his daughters.  Appellant testified and denied any inappropriate touching of his daughters.  According to appellant, his semen was found on the wipes because he recently had sex with Ms. JO and used them to clean up.  Additionally, the defense argued the DNA evidence could have been from one of his sons.

## LAW AND DISCUSSION

*Improper government argument*

"Trial counsel is entitled 'to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.'"  *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000).  However, trial counsel are prohibited from "unduly . . . inflam[ing] the passions or prejudices of the court members."  *United States v. Marsh*, 70 M.J. 101, 102 (C.A.A.F. 2011) (quoting *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983)); Rule for Courts-Martial [hereinafter R.C.M.] 919(b) Discussion.  We focus not "on words in isolation, but on the argument as 'viewed in context.'"  *Baer*, 53 M.J. at 238 (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).  We review improper arguments de novo.  *Marsh*, 70 M.J. at 104.

If an argument is improper, we next determine "whether it materially prejudiced the substantial rights of the accused."  *Baer*, 53 M.J. at 237.  We assess whether the misconduct impacted the accused's substantial rights by examining and balancing three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction."  *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005).  Indicators of the severity of the misconduct include:  "(1) the raw numbers – the instances of misconduct as compared to the overall length of the argument; (2) whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the findings argument or the case as a whole; (3) the length of the trial

(4) the length of the panel's deliberations and (5) whether the trial counsel abided by any rulings from the military judge." *Id.* at 184.

## *A. Rebuttal Argument*

During the assistant trial counsel's (ATC) rebuttal argument, ATC argued appellant was concerned about money and the following transpired in the presence of the panel:

> ATC: . . . [Appellant] is concerned about money—Your Honor, and I am concerned about my safety now in this courtroom.
>
> MJ: Okay. What's the issue?
>
> ATC: Your Honor, during that part of my argument [appellant] leaned over to his military defense counsel . . . who had to grab him by the arm as it appeared to me.
>
> MJ: Alright. Stop. Members, we have to have a hearing outside of your presence. Please return to the deliberation room.

After the panel members left the courtroom, the parties discussed the situation. The ATC stated that as she gave her rebuttal argument, she noticed appellant reaching towards his defense counsel while appearing to glare at her. The trial counsel corroborated the ATC's account stating he heard "significant movement." The defense explained that appellant was just talking "a little too loud" to them so they were telling him to be quiet and military counsel put his arm on appellant. Additionally, civilian defense counsel confirmed that there was some additional movement when he was leaning over the table in an attempt to tell the military defense counsel, who was seated on the other side of appellant, to make an objection. The military judge stated he did not see the movement but did hear "rustling," "loud voices," and "abrupt movement."

The defense moved for a mistrial. The military judge denied the motion finding that the ATC's comments were not intentional or unjustified because there were movements and raised voices, no one was between her and appellant, and she was at an angle where it was difficult for her to see what was going on. The military judge also explained that a mistrial is a drastic remedy and because other remedies are available he denied defense's motion.

The military judge asked the defense if there was any other relief they wanted and mentioned the ability to voir dire the members or for the military judge to give a

4

curative instruction. The defense did not think voir dire was necessary. The military judge also encouraged the defense to raise the issue again if the instruction was inadequate. The military judge gave the following instruction to the panel members:

> MJ: Members, prior to the court's recess or sending you out of the courtroom during a hearing—I looked into a matter about concerns by trial counsel about some rapid movements she saw out of the corner of her eye. I got explanation from all counsel on it. I am fully satisfied that there was nothing improper done by any member of the defense team or by [appellant], that the action was merely interpreted. It's been all cleared up, and we will resume with rebuttal argument.

ATC resumed her rebuttal argument and there were no additional objections from the parties on the issue.

In the present case, we do not find prosecutorial misconduct. However, we find that the ATC's remark in reference to her fear was improper because it was not derived from the evidence presented at trial.

Applying the *Fletcher* test, we find that although the first factor may favor appellant, the military judge's actions were sufficient to cure the ATC's improper comment. In response to defense objection, the military judge immediately gave a curative instruction to the panel that the matter involved ATC wrongly interpreting some movements in the courtroom and ensured the panel that the defense and appellant did nothing improper. Additionally, we find the weight of the evidence supporting appellant's convictions is strong: all three of the children testified in detail about the sexual abuse. The DNA evidence was conclusive and consistent with Ms. CO's testimony. Considering all three of the *Fletcher* factors, we conclude relief is not warranted because appellant suffered no prejudice.

"A military judge has considerable latitude in determining when to grant a mistrial. This Court will not reverse the military judge's decision absent clear evidence of abuse of discretion." *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003) (citations and quotation marks omitted). Here, we find the military judge did not abuse his discretion when he denied appellant's motion for a mistrial because the curative instruction was a sufficient remedy. We also note that the decision not to voir dire the members regarding ATC's comment indicated defense counsel's satisfaction with the military judge's instruction.

*B. Sentencing Argument*

When no objection is made during trial, we review counsel's arguments for plain error, which occurs "when: (1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to an appellant's substantial rights." *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007), *citing United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998).

At trial, defense counsel did not object to trial counsel's sentencing argument. On appeal, appellant asserts that trial counsel offered numerous instances of improper argument during sentencing. We discuss most of these instances and assess whether it resulted in prejudice to appellant.

1. *"Keep your kids away from me"*

During the merits portion of the trial, Ms. CO testified that appellant told her, "When he's a grampa to keep my kids away from him, because he wouldn't be able to help himself." Trial counsel paraphrased this quote and repeated it six times during their sentencing argument.

"When arguing for what is perceived to be an appropriate sentence, the trial counsel is at liberty to strike hard, but not foul, blows." *Baer*, 53 M.J. at 237 (citations omitted). Trial counsel may argue any evidence properly introduced into evidence on the merits, recommend a lawful sentence, and refer to generally accepted sentencing philosophies in argument. *See* R.C. M. 1001(f)(2) and (g).

In this case, the evidence was properly introduced on the merits and it was offered again in sentencing without objection. Trial counsel mentioned it repeatedly as a theme for their sentencing argument. Taking this phrase in context of the entire argument, we find it refers to rehabilitation and specific deterrence of misconduct by the appellant. Although trial counsel struck hard blows, his argument was derived from the evidence and did not cross the line into an improper argument.

2. *Mr. GM's testimony*

Mr. GM is the victims' grandfather. He testified during sentencing that he took care of the children shortly after Ms. JO told them what happened to the children. He moved the youngest children, Mr. GVO, Ms. MO, Mr. SO, and Ms. SMO, from Germany to Colorado to protect them. Mr. GM also testified that the children, himself, his wife, and ex-wife, were all in therapy as a result of appellant's misconduct. In response to a question about whether he has concerns for his grandchildren's safety and current well-being he stated: "Very much so . . . . because I see no regret or remorse from their father," and explained that their progress with therapy has been delayed because appellant has pushed this "charade"

6

for so long. During the sentencing argument, trial counsel asked the members to consider his testimony that "he still fears for the safety and for the welfare of his [grandchildren]" and that the whole family attends therapy.

As a family member of the victims, Mr. GM can testify to the "psychological and medical impact" of the accused's crimes on the victims. *See* RCM 1001(b)(4). This evidence was proper victim-impact aggravating evidence because it was "directly relating to the offenses of which the accused has been found guilty." *United States v. Hardison*, 64 M.J. 279, 281 (2007). As such, trial counsel's argument mentioning Mr. GM's testimony was permissible.

### 3. Cyber-bullying

During sentencing, Ms. CO testified about considering ways to kill herself because she knew appellant would never stop raping her. Ms. CO testified that she was taking medication for depression and sought therapy weekly as a result of appellant's abuse. Ms. CO also testified that one of her friends recently posted on her Facebook account: "Didn't you get raped by your dad?" As a result of that posting, she ran outside screaming during a storm and climbed on top of the roof hoping to be electrocuted. There was no objection to this testimony at trial. The trial counsel then reiterated the "cyber-bullying" instance during the sentencing argument.

We agree with appellant that this instance of "cyber-bulling" was too attenuated – the government failed to establish a link between appellant's conduct and a Facebook message sent from "Josh." This evidence was not proper aggravating evidence and it fails Military Rule of Evidence 403's balancing test. As such, we find it constitutes impermissible argument. Although there was no curative instruction for the cyberbullying comments, we note that it was briefly mentioned and insubstantial in comparison to the other sentencing evidence presented.

### 4. Comments on appellant's unsworn statement

During sentencing, appellant gave an unsworn statement. During the sentencing argument, ATC stated:

> You should also consider what [appellant] said, not during
> his testimony on the stand, but what he just tried to tell
> you within the last hour. This bogus statement—24 hours
> after denying all of what you found him guilty of, quote,
> "I'm a changed man; I'm a better man." He could have
> said that yesterday. But now just because you've brought
> back a guilty verdict, he's suddenly a changed man and a
> better man. Don't buy into that, Members. Don't give an

> ounce of credit to that statement. He gave that statement unsworn and not subject to cross-examination. He cannot be believed.

Trial counsel may comment on the *nature* of an accused's unsworn statement - including that it has less evidentiary value than a sworn statement - but cannot ask the court to draw an adverse inference against the accused for making an unsworn rather than a sworn statement. *United States v. Breese*, 11 M.J. 17 (C.M.A. 1981); *United States v. Marsh*, 70 M.J. 101 (C.A.A.F. 2011). Trial counsel may also argue the accused's lack of remorse during an unsworn statement without commenting on the accused's exercise of a fundamental right. *See United States v. Edwards*, 35 M.J. 351 (C.M.A. 1992). *See also United States v. Toro*, 37 M.J. 313, 318 (C.M.A. 1993) (Trial counsel's comment that the accused did not "acknowledge[] [the] finding of guilty" in his unsworn statement was a proper comment on the accused's lack of remorse).

In the present case, considering the context of ATC's statement, we find the ATC was merely commenting on the nature of the statement – that it was not subject to cross-examination. We also find the ATC's comments about appellant's lack of remorse are reasonable when considering appellant elected to testify at trial, denied wrongdoing, and then provided an unsworn statement at sentencing stating: "I'm a changed man; I'm a better man." Thus, under these circumstances, we find the ATC's argument to be permissible.

### 5. Prejudice

Reviewing the alleged instances of improper argument together in context with trial counsel's entire argument, we are convinced the argument as a whole did not "seek unduly to inflame the passions or prejudices of court members." *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983). In addition, appellant has failed to demonstrate prejudice. Considering the weight of the evidence supporting the sentence adjudged we are confident that appellant was sentenced based on the evidence alone.

### C. Comments on appellant's Fifth Amendment rights

During the merits portion of the trial, a recognized expert in clinical and forensic psychiatry testified for the government about sexual assault victim behavior and sexual assault offender dynamics. This was a "blind expert." She did not review materials in the case and only knew this was a non-stranger sexual assault case involving children. She testified to educate the members about factors that may or may not be present in the case. The defense also had an expert in clinical and forensic psychology testify during their sentencing case. The defense expert evaluated appellant and conducted a risk and rehabilitation potential assessment.

During the defense sentencing argument, defense counsel discussed the government's expert and stated:

> She's the expert; she's testified in hundreds of courts-martial. She's been in a lot of courts-martial, and the government has also paid for her to testify in three of [the trial counsel's] courts-martial. They have their expert. How come she wasn't there? You know why? Because she wouldn't have been able to give you objective, clinical statistics. But, more importantly, she never evaluated [appellant]. Who did?

The ATC subsequently objected stating that it was "an unfair characterization. We have asked [her] to evaluate him, and the defense denied access to [appellant]." Defense counsel did not object to these comments at trial.

Trial counsel may not comment on the accused's exercise of a fundamental right. *Griffin v. California*, 380 U.S. 609 (1965); R.C.M. 919(b) Discussion. "[U]nless, for example, an accused invites such testimony or argument in rebuttal to his own case." *Moran*, 65 M.J. at 181 (citing *United States v. Robinson,* 485 U.S. 25, 32 (1988); *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005)). When invited by the defense, trial counsel comments are permissible when they are a "fair response to claims made by the defense." *Carter*, 61 M.J. at 33. Because appellant failed to preserve this issue at trial, we review for "plain error." *Moran*, 65 M.J. at 181.

We find the ATC's comments to be permissible because these statements were not implicating appellant's rights. Even if these statements indirectly or by innuendo commented on appellant's exercise of a fundamental right, the comments were a reasonable response to defense's claim that the government's expert never evaluated appellant.

**CONCLUSION**

Upon consideration of the entire record, the findings and sentence are AFFIRMED.

Senior Judge TOZZI and Judge CELTNIEKS concur.

9



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court