# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant NORMAN R. STOUT**
**United States Army, Appellant**

ARMY 20120592

Headquarters, Fort Drum
S. Charles Neill, Military Judge
Colonel Steven C. Henricks, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Timothy G. Burroughs, JA (on brief); Colonel Mary J. Bradley, JA; Major Patrick J. Scudieri, JA; Captain Timothy G. Burroughs, JA (on reply brief).

For Appellee: Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Jennifer A. Donahue, JA (on brief).

9 April 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

As this case demonstrates, successfully challenging an appellant's guilty plea on appeal can carry significant risk, especially when charges conditionally dismissed as part of a pretrial agreement (PTA) reemerge at a rehearing and serve to increase the appellant's punitive exposure.

In 2012, appellant, before a military judge sitting as a general court-martial, pleaded guilty pursuant to a PTA to one specification of abusive sexual contact with a child, one specification of indecent liberties with a child, and one specification of possession of child pornography in violation of Articles 120 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920 and 934 (2006 & Supp. I 2008). In accordance with the PTA, the military judge conditionally dismissed nine other specifications, which would ripen into dismissal with prejudice upon appellate

review. On appeal, we granted appellant's sole assignment of error that his pleas were improvident, set aside the findings and sentence, and authorized a rehearing. *United States v. Stout*, 2014 CCA LEXIS 469 (Army Ct. Crim. App. 25 Jul. 2014) (mem. op.).

As we explain in further detail below, appellant was not convicted at the rehearing of any offense to which he pleaded guilty at the first trial.[1] Instead, this case is before us for review under Article 66, UCMJ, based upon several offenses that, at the first trial, the government elected not to pursue in accordance with the PTA. As the sentence limitations contained in Article 63, UCMJ, and Rule for Court-Martial [R.C.M.] 810 did not apply to these offenses, the convening authority was able to approve the adjudged sentence that, in terms of confinement, was more than twice as long as that adjudged based on appellant's initial guilty plea.[2, 3]

We conclude appellant's PTA was cancelled and void once this court set aside his improvident guilty plea, thus placing appellant and the government in the same position they were at the start of the first trial. Of the remaining issues raised, we find one warrants relief, although for a reason other than posed by appellant. We have also considered the matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit.[4]

---

[1] The military judge dismissed the abusive sexual contact charge after arraignment, granted defense counsel's motion under R.C.M. 917 for a finding of not guilty as to the indecent liberties charge, and found appellant not guilty of possessing child pornography.

[2] *See* R.C.M. 810(d)(1). The maximum punishment at the retrial based upon the findings of guilty included a dishonorable discharge and confinement for 115 years.

[3] Despite the outcome at the rehearing, appellant did not complain on this appeal that he received deficient advice regarding the risks of appealing the providence of his guilty plea or the risks of entering a plea of not guilty at the rehearing. We note appellant, during his unsworn statement at the retrial, commented "I threw the guilty plea." Out of caution, we invited appellant if he wanted additional time to file supplemental assignments of error. Appellant declined our invitation.

[4] Appellant's Article 13, UCMJ, claim warrants comment. After this court set aside the findings and sentence of the first trial, appellant was paid as an E-1 instead of as an E-6. At his rehearing, the military judge found this pay discrepancy was not as punishment, but the function of a Defense Finance and Accounting Service policy and that agency's interpretation of their statutory authority to pay an accused pending a rehearing. We agree. *See Howell v. United States*, 75 M.J. 386 (C.A.A.F. 2016).

## BACKGROUND

*A. The Offenses*

Appellant was stationed at Fort Drum, New York, while his family lived in Michigan. Appellant's family moved to Watertown, New York, and joined him in August 2008. Appellant, his wife, and her two children lived together in Watertown from August 2008 until June 2009.

At the time they lived together, appellant's stepdaughter, NL, was between 14 and 15 years old. Since NL was maturing physically, appellant's wife asked appellant to give NL a "sex talk." Appellant used these "sex talks" as a means to perform multiple sexual acts on his stepdaughter, to include: placing NL's hand on his genitalia; touching her breasts, and touching her genitalia; licking NL's vagina; and watching pornography with NL sitting on his lap while he had an erection. Since NL's mother started work very early in the morning, these sexual acts occurred around once a week in the morning when appellant did not have duty or physical fitness training.

On one occasion, appellant's wife observed appellant standing outside the shower while NL was bathing. Appellant's wife thought it was inappropriate for him to be in the bathroom while their daughter was showering. However, appellant provided her with what she viewed as a satisfactory explanation for his presence. On another occasion, appellant pulled open the curtains and watched NL shower. On yet another occasion while NL showered, appellant entered the shower naked, rubbed NL's naked body, and washed her hair.

Around June 2009, appellant and his family temporarily stayed in a hotel in advance of appellant's permanent change of station (PCS) from Fort Drum and the family moving back to Michigan. While at the hotel room alone, appellant undressed and pushed NL onto a bed. Appellant laid on top of her while he was naked and with an erect penis before they were interrupted by a phone call.

In 2010, while appellant was deployed to Iraq, NL confided to her mother that appellant had been sexually abusing her. When his wife confronted appellant about the allegations over the phone, appellant stated "he did not do anything she did not want or show her anything she did not want to see." His wife reported the allegations of sexual abuse to the state police.

As part of the subsequent investigation, a U.S. Army Criminal Investigation Command (CID) investigator in Iraq interviewed appellant. In his statement to CID, appellant explained: he discussed sexual education with NL, but did not touch her inappropriately even though during some of these sex talks, NL may have been straddling him; while on a couch together, NL was "grinding her buttocks into his

pelvic area;" he may have inadvertently touched her breast while they were "horsing around;" he spoke to NL while she was showering and only "poked" at the curtains "to be funny;" NL may also have walked in on him when he was getting out of the shower and saw his erect penis; he may have laid in bed with NL to talk; and NL saw him watch adult pornography and may have observed him with an erection. Appellant admitted he had dreams about sexual encounters with NL that may have included having intercourse with her.

At the contested rehearing, among other defenses, appellant's counsel argued that NL fabricated all of the allegations because she wanted to live at the family's home located on a farm in Michigan.

*B. Procedural History*

At the original trial, appellant entered into a PTA with the convening authority (CA) that served to cap any confinement to ten years, but put no other limitations on the adjudged sentence the CA could approve. As part of the PTA, the CA agreed to dismiss nine other specifications, to include abusive sexual contact with a child, indecent conduct with a child, sodomy of a child, and assault with intent to commit rape.[5] This dismissal was without prejudice, to ripen into with prejudice upon appellate review. The PTA provided the CA could cancel the agreement if the appellate court found appellant's guilty plea to be improvident. During his plea inquiry, the military judge discussed the terms of the offer for PTA with appellant. Appellant stated he understood and agreed with these terms. Upon acceptance of the appellant's plea, the military judge conditionally dismissed the remaining specifications in accordance with the terms of the PTA.

---

[5] The promulgating order for the first trial, General Court Martial Order Number 27, Headquarters, Fort Drum, Fort Drum, New York, dated 27 November 2012, incorrectly reflects a finding of "not guilty" to: Specifications 1, 2, 4, 6, 7 and 8 of Charge I; the Specification of Charge II and Charge II; the Specification of Charge III and Charge III; and Specification 2 of Charge IV. The appellant was not acquitted of these charges; the military judge dismissed them in accordance with the PTA "without prejudice, to ripen into prejudice upon appellate review." The Report of Result of Trial prepared in accordance with Rule for Court-Martial 1101(a) likewise shows these charges were dismissed. The CA, in taking action on the case, did not change any of the findings of the trial court or announce any action contrary or different than the terms of the PTA. It is, therefore, clear to us from the record that the promulgating order is in error and should properly reflect these charges as "dismissed without prejudice, to ripen into prejudice upon appellate review." We, accordingly, correct that order here.

4

Following our decision, the government referred most of the original charges to a retrial, with some changes.[6] Prior to the trial on the merits, defense counsel moved to dismiss the charges that had been dismissed at the first trial pursuant to the PTA, arguing the dismissal of these charges ripened into dismissal with prejudice once the case was reviewed on appeal. In denying this motion, the military judge found that the "four corners of the agreement" meant dismissal ripened upon completion of appellate review. The military judge concluded that the PTA expressly stated that the agreement could be cancelled if appellant's initial guilty plea was found improvident on appeal, a reading that was also consistent with R.C.M. 705 (Pretrial agreements).

Appellant then pleaded not guilty before a military judge at the retrial. The military judge found appellant guilty of three specifications of abusive sexual contact with a child, two specifications of committing an indecent act with a child, sodomy with a child, and assault with the intent to commit rape, in violation of Articles 120, 125 and 134, UCMJ. This time, appellant's sentence included a dishonorable discharge, confinement for eighteen years, and reduction to the grade of E-1. The CA approved the adjudged sentence and credited appellant with 779 days towards confinement.

## LAW AND DISCUSSION

### A. *Effect of the PTA from the first trial*

Appellant argues that the CA's agreement under the PTA to dismiss seven of the specifications "upon appellate review" was satisfied when his first trial was docketed with this court on appeal.[7] We disagree.

"When an appellate issue concerns the meaning and effect of a pretrial agreement, interpretation of the agreement is a question of law, subject to review under a de novo standard." *United States. v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (citing *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006)).

Appellant suggests the term "upon appellate review" in the PTA created an ambiguity that must be resolved in appellant's favor because, essentially, that term could be equated with docketing of the case with this court. That is, it could be read

---

[6] The convening authority, upon the advice of the Staff Judge Advocate, did not refer one specification, alleging abusive sexual contact with a child, to the new trial.

[7] Specifications 1, 2, 3, 5 and 6 of Charge I, Charge II and its Specification, and Specification 2 of Charge III (as renumbered at the retrial). Appellant also asserts the CA "entered findings of not guilty" as to these specifications. This argument lacks merit. *See supra* note 3, at 4.

to mean the CA would dismiss the charges before this court completed its review of appellant's guilty plea. This argument fails for two reasons.

First, individual terms of a PTA are not read in a vacuum. Basic principles of contract law apply when interpreting a PTA. *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999) (citations omitted). When the terms of an agreement "are unambiguous, the intent of the parties is discerned from the four corners of the contract." *Id.* We agree with the military judge when he concluded a plain reading of appellant's PTA meant the charges would be dismissed upon completion of appellate review. This is the only reasonable reading of the PTA given that the agreement expressly stated the CA may withdraw from the agreement if appellant's plea were determined improvident by this court.

Second, appellant cannot enforce a term of PTA that no longer exists. The PTA provided that appellant would plead guilty to several specifications. Needless to say, at the rehearing, appellant's plea of not guilty to all charges violated this agreement. The PTA provided the CA could withdraw from the agreement upon a determination by our court that appellant's plea was improvident. Far from being a unique PTA term, this was simply a restatement of the CA's authority set forth in R.C.M. 705(d)(4)(B) to withdraw from an agreement upon an appellate decision finding appellant's plea improvident. Our decision setting aside the findings and authorizing a rehearing in this case "place[d] the United States and the accused in the same position as they were at the beginning of the original trial." *United States v. Von Bergen*, 67 M.J. 290, 294 (C.A.A.F. 2009) (quoting *United States v. Staten*, 21 C.M.A. 493, 495, 45 C.M.R. 267, 269 (1972)); *see* R.C.M. 810 (where rehearing requires findings on all charges and specifications, the procedure shall be the same as the original trial). Very clearly, by referring all of the charges to the retrial, the CA withdrew from the PTA. This decision by the CA in withdrawing from the PTA "was to place the parties in the pretrial status quo ante." *Von Bergen*, 67 M.J. at 293. That is, the net effect of authorizing a rehearing in this case was to place the parties in the position as if the first proceeding never happened. *See Howell v. United States*, 75 M.J. 386, 392 (C.A.A.F. 2016) (citations omitted).

This court finds that the terms of the PTA were unambiguous and that the PTA was cancelled when this court found appellant's guilty plea improvident. The charges and specifications were not dismissed under the terms of the PTA. As such, at the rehearing the CA was authorized to re-refer Specifications 1, 2, 3, 5 and 6 of Charge I, Charge II and its Specification, and Specification 2 of Charge III for the rehearing.

### B. Did the government make major changes to three of the alleged offenses?

At the new trial and again on appeal, appellant asserts amendments made by the government to Specifications 1 and 6 of Charge I and the Specification of

Charge II prior to referral of charges to the rehearing constituted a major charge requiring a new preferral under R.C.M. 603(d). We disagree.

### 1. *Changes at issue*

In 2011, the three disputed specifications were preferred, along with the other charges later heard at the retrial, and an Article 32, UCMJ, investigation was completed. NL testified at the Article 32 hearing that appellant sexually abused her when they lived in an apartment at Watertown, New York. She could not recall the specific dates she lived at the Watertown residence, but stated her mother would know the dates. At the Article 32, UCMJ, hearing, NL's mother testified they lived in Watertown between August 2008 and June 2009. In 2012, the CA referred the three specifications, along with others, to appellant's initial trial. However, at the first trial, the date ranges on these three charges were not expanded prior to referral to cover the entire period NL resided in Watertown.

On 4 November 2014, after our remand, the government amended the date ranges for these three specifications as follows: Specification 1 of Charge I, alleging abusive sexual contact, from "on or about 1 August 2008 and on or about 6 August 2008" to "on or about 1 August 2008 and on or about 3 June 2009;" Specification 6 of Charge I, alleging indecent liberties with a child, from "on or about 14 January 2009 and on or about 28 January 2009" to "on or about 7 August 2008 and on or about 3 June 2009;" and the Specification of Charge II, alleging forcible sodomy, from "on or about 14 February 2009 and on or about 22 March 2009" to "on or about 7 August 2008 and on or about 3 June 2009." On 17 November 2014, following the pretrial advice and recommendation of the Staff Judge Advocate (SJA), the CA referred the charges and specifications to a general court-martial.

During an Article 39(a), UCMJ, session on 30 January 2015, appellant moved to dismiss the amended specifications on the basis that the changes were major and required repreferral under R.C.M. 603. The military judge ultimately denied this motion, reasoning in part that the changes to the dates did not constitute a major change as they did not "add a party, change the offenses, or add a substantial matter" not fairly included in the previously-preferred [s]pecifications," and further, given appellant's opportunity to prepare a defense to the amended charges, did not affect a substantial right of the appellant. The contested trial on the merits began on 14 September 2015.

### 2. *Were these major changes under Rule for Courts-Martial 603?*

"Whether a change made to a specification is minor is a matter of statutory interpretation and is reviewed de novo." *United States v. Reese*, 76 M.J. 297, 300 (C.A.A.F. 2017) (citing *United States v. Atchak*, 75 M.J. 193, 195 (C.A.A.F. 2016)).

Rule for Courts-Martial 603(a) provides "[m]inor changes in charges and

7

specifications are any except those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." The government can make minor changes to a charge and specification before arraignment. R.C.M. 603(b). Major changes, or "[c]hanges or amendments to charges or specifications other than minor changes may not be made over the objection of the accused unless the charge or specification affected is preferred anew." R.C.M. 603(d).

Generally, "changes in the alleged time or date of an offense are permissible since they normally do not affect the substance of the offense, preclude invocation of the statute of limitations, or mislead the accused as to that which he must defend against." *United States v. Longmire*, 39 M.J. 536, 538 (A.C.M.R. 1994) (citing *United States v. Hunt*, 37 M.J. 344 (1993); *United States v. Brown*, 16 C.M.R. 257; *United States v. Squirrel*, 2 U.S.C.M.A. 146, 7 C.M.R. 22 (1953)). Applying the plain language of R.C.M. 603, we do not find the military judge erred in finding the changes were minor.

First, the change did not change the substance of each offense and the overt acts remained the same. The alleged conduct, parties, and location of the offense, remained the same. Second, the change in date range did not affect a substantial matter not fairly included in the previously preferred charges and specifications. Each of the specifications included "on or about" language and the dates of the alleged sexual abuse were not offense-defining. Third, since the specifications did not include "on divers occasions" language, no additional offenses were alleged by the changes in the date range for the specifications.

We conclude, as did the military judge, repreferral of these charges was not necessary because the changes to the date ranges were minor.

### 3. *Prejudice Analysis for Pre-Referral Amendments*

The military judge's ruling was made before CAAF issued *Reese*. As such, we note the military judge, in determining the changes in this case were minor, relied upon *United States v. Sullivan*, where our superior court opined a change is minor if "no additional or different offense is charged . . . and if the substantial rights of the defendant are not prejudiced." 42 M.J. 360, 365 (C.A.A.F. 1995) (citations omitted). Our superior court in *Reese*, overturned the second prong of this longstanding test in finding the plain language of R.C.M. 603(d) does not contemplate prejudice as a consideration in determining whether a change is major when the defense objects to the change. *Reese*, 76 M.J. at 301.

However, even in light of *Reese*, the military judge's ultimate conclusion was correct, as the changes to these charges were not major and the *pre-referral* amendments of the specifications for the rehearing did not prejudice a substantial

8

right of the accused. As our superior court noted in *Reese*, a major change effectively deprives a court of jurisdiction to hear the charge. 76 M.J. at 301-02 ("The practical effect is that if a change is major and the defense objects, the charge has no legal basis and the court-martial may not consider it unless and until it is 'preferred anew,' and subsequently referred."); *see* R.C.M. 201(b)(3). *Reese* is distinguishable from this case in that the changes here occurred prior to referral. Normally, Article 59(a), UCMJ, prohibits an appellate court from setting aside a finding of guilty without finding prejudice. In *Reese*, because the offense (once amended) *had never been referred to trial,* the court-martial lacked jurisdiction, and Article 59(a), UCMJ, did not apply. Here, however, as the charges were amended *prior* to referral, we would see no way to avoid the mandate of Article 59(a), UCMJ. In any event, as we find any changes were "minor," we need not decide the issue definitively.

Unlike the post-referral amendments in *Reese* that deprived the court-martial of jurisdiction to hear the charges, the amendments to the charges were made prior to the SJA's pretrial advice and referral by the CA. The amendments were warranted by the evidence presented at the Article 32, UCMJ, investigation. Article 34(c), UCMJ, supports the SJA recommending post-Article 32 and pre-referral changes to charges and specifications if warranted by the evidence. "If the charges or specifications are not formally correct or do not conform to the substance of the evidence contained in the report of the investigating officer, formal corrections, and such changes and in the charges and specifications as are needed to make them conform to the evidence, may be made." UCMJ, art. 34(c).

Appellant was not prejudiced by the pretrial amendments and was on notice of the charges he needed to defend against. The changes were made before referral, before arraignment, and 10 months before the actual trial dates for the rehearing. The appellant was not misled as to the offenses charged, did not request a new Article 32 hearing, or request a bill of particulars. Appellant was aware from the Article 32 the specific conduct alleged in each of these specifications and the evidence supporting the allegations, to include NL's testimony that the sexual abuse occurred when they lived in Watertown. In light of the evidence adduced at the Article 32 investigation, we find appellant's argument he was misled unpersuasive.[8] Indeed one of the substantial purposes of an Article 32 hearing is to "consider the form of the charges." The pre-referral amendments did not increase the maximum

---

[8] Errors in an Article 32, UCMJ, proceeding are tested on direct review for prejudice under Article 59(a), UCMJ. *United States v. Davis*, 64 M.J. 445, 449 (C.A.A.F. 2007); *see also United States v. Mickel*, 9 C.M.A. 324, 327, 26 C.M.R. 104, 107 (1958) ("Once the case comes to trial on the merits, the pretrial proceedings are superseded by the procedures at the trial; the rights accorded to the accused in the pretrial stage merge into his rights at trial.").

punishment for the offenses. The changes did not affect the statute of limitations and appellant is protected against double jeopardy.

We conclude, as did the military judge, that appellant was not materially prejudiced by the pre-referral changes to the specifications prior to the rehearing.

### C. *Legal and Factual Sufficiency for Indecent Liberties*

Appellant asserts that the evidence is legally and factually insufficient to support the finding that appellant committed indecent liberties on *divers* occasions by "entering the bathroom where [NL] was showering, opening the shower curtain, looking at her naked body, and watching her shower," as set forth in Specification 5 of Charge I. We disagree, but nonetheless provide relief on a separate basis.

NL testified appellant watched her shower a few times, but could "only remember about three times" specifically. First, on one instance, appellant entered the shower naked and touched her everywhere to include her vagina and breasts. On a second occasion, appellant swung open the shower curtains and looked at NL while she was showering, conduct covered by Specification 5 of Charge I. On a third occasion, NL testified that her uncle caught appellant opening the curtains while she was showering. However, this third incident was not within the charged locations or timeframes and was not reflected on the charge sheet.

We view the issue here as one involving an unreasonable multiplication of charges. Appellant was charged with two shower incidents involving NL, both occurring in Watertown, and the evidence adduced at trial only supported two charged incidents, with one, covered by Specification 6 of Charge I, involving additional conduct by appellant. However, the "divers" language in Specification 5 of Charge I, as it alleges much of the same conduct, would operate to hold appellant liable for substantially the same conduct in two different specifications. Accordingly, we grant relief in our decretal paragraph by dismissing the language "on divers occasions" from Specification 5 of Charge I. *See United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).

### D. *Ineffective Assistance of Counsel*

Appellant asserts that his defense counsel was ineffective for calling a witness, Ms. Tiffani Greenwald, who bolstered the government's case, and by failing to pursue evidence that NL's testimony may have been unduly influenced by a Victim Witness Liaison, Ms. JA. We disagree.

#### 1. *Ms. Greenwald's Testimony*

At trial, NL testified that she spoke to her close friend and neighbor in Michigan, Ms. Greenwald, on numerous occasions and told her "about 90 percent of

what happened" with appellant. In response, defense counsel called Ms. Greenwald to testify for the defense on findings. Her testimony consisted of 5 pages of the 631 page transcript. Ms. Greenwald testified that NL had called her only once from New York. NL was upset and said that appellant was touching her in inappropriate places. NL did not discuss specifics of where appellant was touching her. NL described wrestling with appellant, which made her feel uncomfortable. NL also mentioned appellant watched her as she showered. That is, Ms. Greenwald contradicted NL on the number of times they talked and the specificity of the alleged abuse. However, Ms. Greenwald's testimony was generally consistent with NL's report of being abused.

In closing argument, defense counsel put forward a theme that NL embellished the wrestling and incident in the shower because she didn't want to leave a farm in Michigan, where she lived with her mother and siblings, and move back with appellant. Defense counsel highlighted NL's testimony she told Ms. Greenwald "90 percent" of what happened, and this amounted to wrestling and looking at NL in the shower. While conceding wrestling and teaching NL self-defense involved touching, defense counsel argued appellant had no improper purpose in touching NL. Rather, NL's story that the conduct was abusive came forth upon learning the family would be leaving Michigan and moving back with appellant. Added to this theme, counsel argued that NL attributed the abuse she suffered earlier at the hands of another soldier to appellant.

We review claims that an appellant did not receive effective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, (1984)).

As to the first prong, "[w]e do not measure deficiency on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives." *Akbar,* 74 M.J. at 379 (citing *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)) (internal quotation marks omitted). The relevant issue is whether counsel's conduct failed to meet an objective standard of reasonableness or whether it was outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In determining this issue, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

In assessing whether the presumption of competence had been overcome, we apply a three-pronged test:

> (1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions?";
>
> (2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance . . . [ordinarily expected] of fallible lawyers?"; and
>
> (3) If defense counsel was ineffective, is there a "reasonable probability that, absent the errors," there would have been a different result?

*United States v. Grigoruk*, 56 M.J. 304, 307 (C.A.A.F. 2002) (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991).

This case primarily came down to the issue of NL's credibility. The government's case rested largely on NL's testimony, corroborated in part by appellant's wife, who witnessed appellant looking at NL in the shower, and appellant's statement to investigators and his wife. Against this backdrop, defense counsel were faced with finding some way to raise questions about NL's credibility.

Major (MAJ) JK, MAJ AK, and Captain (CPT) MJ, who served as appellant's trial defense counsel each provided affidavits discussing the decision to call Ms. Greenwald.[9] MAJ JK summed up the defense's theory as showing NL "was an attention-seeking young lady who exaggerated greatly by taking a small kernel of truth and spinning it into a mountain." Defense arrived at this theory after researching numerous motives for NL to fabricate, but found "none were likely to be effective or remotely believable." Ms. Greenwald's testimony fit the defense theme that NL embellished any incidents with appellant in that it showed NL only discussed the appellant's conduct once with Ms. Greenwald, and only revealed limited types of conduct. The affidavits from MAJ AK and CPT MJ likewise discuss the decision to call Ms. Greenwald to impeach NL by contradiction.

With the state of the evidence in the record, we find the affidavits submitted by trial defense counsel are a reasonable explanation to call Ms. Greenwald to testify. We also find counsel's performance did not fall "measurably below" the performance ordinarily expected of lawyers. Some cases, even those based solely on testimonial evidence, leave defense few viable options in challenging the credibility of a victim. This case was one such case. In the end, the military judge, having heard and

---

[9] On 5 January 2018, we ordered trial defense counsel to each provide affidavits addressing the decision to call Ms. Greenwald and the alleged attempt by an individual to unduly influence NL. A fourth defense counsel, CPT JG, provided an affidavit which added little to this issue as he was released months before the trial on the merits.

observed NL, found her testimony sufficiently compelling to find appellant guilty of many of the alleged offenses.

For certain, calling Ms. Greenwald presented some risk to the defense. However, appellant's counsel were tasked with trying to attack NL's credibility. Ms. Greenwald confirmed part of NL's testimony, but contradicted other parts. The contradictions were consistent with the defense's theory of the case. In retrospect, it may be that Ms. Greenwald's testimony did more harm than good, but that was the risk. Defense counsel had to play the cards they were dealt. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Akbar*, 74 M.J. at 30 (quoting *Strickland*, 466 U.S. 689). Despite the outcome at trial, defense counsel, at the time of trial, took a calculated–and in our view, reasoned–risk in calling Ms. Greenwald to the stand. Under the circumstances of this case, appellant has failed to overcome the presumption that his counsel acted competently in calling Ms. Greenwald.

Even if we did find counsel was deficient in calling Ms. Greenwald, we do not believe there is a reasonable probability that the outcome of the case would have been different had she not been called. First, while Ms. Greenwald relayed NL's statement that appellant was making her uncomfortable, the only specific acts shared involved appellant wrestling NL and watching NL in the shower. Her testimony did not corroborate NL's testimony as to much of the other charged conduct. Second, Ms. Greenwald did not personally witness these events and, essentially, reiterated in part what NL said in her testimony. Third, the disclosures to Ms. Greenwald were not immediate, but occurred well after the alleged misconduct. That is, her testimony did not have the same impact as would an excited utterance by NL or a similar disclosure close to the events. In short, Ms. Greenwald provided nothing new in terms of specific acts committed by appellant. Finally, as we otherwise find no prejudice, we need not address whether Mr. Greenwald's statements were separately admissible by the government as a prior consistent statement.

### 2. Failure to Investigate Suspicions that NL's Testimony was Unduly Influenced

Appellant's claim that his counsel "failed to pursue evidence that NL's testimony was unduly influenced" is based upon an affidavit from Ms. Heidi Shann, who testified for the defense during sentencing.

In the affidavit, Ms. Shann stated as she was waiting to testify at appellant's trial she observed NL in a "heated discussion with a woman." She had seen the woman at the trial and she was "following [NL] like a mother would follow a child." According to Ms. Shann, the woman appeared angry and frustrated at NL and was

13

shouting at her. The woman said something to NL to the effect of "after everything I did for you, you had to go and do this." Another defense sentencing witness, Ms. Candida Langford, also observed the conversation. The conversation concerned Ms. Shann since "it seemed that this woman had been coaching NL." Ms. Shann states she and the other witness informed appellant's defense counsel about their concerns and observations.

Ms. Shann's affidavit provides no more than speculative and conclusory observations that an argument between NL and another person must have been the product of witness coaching. Ms. Shann's observations were made several days after NL testified on the merits. The affidavit provides no information as to how NL was supposedly coached or how NL supposedly altered her testimony based upon the alleged coaching. Indeed, even if we were to accept the speculative inference contained in the affidavit, we would have to infer that NL had not testified as she had been coached. That is, we would have to infer the woman appeared angry since NL testified contrary to how she was instructed.

We do not find appellant overcomes the presumption of competence of his defense counsel based upon this affidavit. For the same reason, we see no need to order an evidentiary hearing to decide this issue. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) ("[I]f the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis."). Accordingly, we find appellant's claim on this issue lacks merit.

*E. Improper Sentencing Argument*

Appellant alleges that the government's sentencing argument improperly attacked appellant's rights to remain silent and plea of not guilty, which resulted in the military judge imposing a higher sentence.

In his unsworn statement, appellant did not mention the findings of guilty and his sole comment about NL was "I wish no ill will to my daughter, my ex-wife and I hope they can live some kind of prosperous life no matter what happens to me today."

During argument, trial counsel, without objection from defense counsel, commented six times on appellant's failure to apologize to NL in his unsworn statement. Trial counsel referred to appellant: as an "unapologetic sexual abuser" who "can't even say [he's] sorry;" as somebody who "still hasn't taken responsibility[] [and] still hasn't apologized" and "never took responsibility when he took the stand;" and as somebody who "spent 2 years in jail and is still so selfish that he has not recognized what he did to [NL] . . . ." Trial counsel added "ultimately, this case is about punishment, retribution. It's about punishing someone for ruining their child's life and never apologizing for it."

14

"Improper argument involves a question of law that [we] review[ ] de novo." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014). As a threshold matter, trial defense counsel did not object to trial counsel's sentencing argument at trial. Rule for Court-Martial 1001(g) provides a defense counsel's "[f]ailure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection." Similar to R.C.M. 919(c), which governs argument on findings, R.C.M. 1001(g) is unambiguous and has no "plain error" condition. As such, appellant waived any objections to the government's sentencing argument. *See United States v. Kelly*, 76 M.J. 793 (Army Ct. Crim. App. 2017); *United States v. Ahern*, 76 M.J. 194 (C.A.A.F. 2017) (analyzing the waiver provision of Mil. R. Evid. 304).

Although we established in *Kelly* a binding precedent for this court that a plain error analysis was not appropriate in analyzing unpreserved error to argument, we recognize our superior court has granted review in that case on that very issue. *United States v. Kelly*, No. 17-0559/AR (C.A.A.F. 20 Dec. 2017) (order). Accordingly, as we recently did in *United States v. Koch*, we will nonetheless review this case for plain error as a matter of judicial economy. ARMY 20160107, 2018 CCA LEXIS 34, *11 (Army Ct. Crim. App. 29 Jan. 2018) (citing *United States v. Motsenbocker*, No. 201600285, 2017 CCA LEXIS 651, *7 (N.M. Ct. Crim. App. 17 Oct. 2017), in noting our sister service applied a plain error analysis to unpreserved objections to argument).

To establish plain error, appellant must prove (1) there was error, (2) it was plain or obvious, and (3) the error resulted in material prejudice. *United States v. Flores*, 69 M.J. 366, 369 (C.A.A.F. 2011). Where improper sentencing argument occurs, we must determine whether we can be confident that the appellant was sentenced on the basis of the evidence alone. *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013).

Argument by trial counsel concerning an accused's right to remain silent is "beyond the bounds of fair comment." *United States v. Paxton*, 64 M.J. 484, 487 (C.A.A.F. 2007) (citation omitted). However, an accused's refusal to admit guilt or accept responsibility may be an appropriate factor for the military judge or members' consideration in their sentencing deliberation on rehabilitation potential. *United States v. Means*, 2017 CCA LEXIS 330, *6-*7 (A.F. Ct. Crim. App. 12 May 2017 2017) (citing *United States v. Garren*, 53 M.J. 142, 144 (C.A.A.F. 2000); *United States v. Edwards*, 35 M.J. 351, 355 (C.M.A. 1992)). "As a general rule, the predicate foundation is that an accused has either testified or has made an unsworn statement and has either expressed no remorse or his expression of remorse can be arguably construed as being shallow, artificial, or contrived." *Id.* (quoting *Edwards*, 35 M.J. at 355). "Other evidence in the record may also give rise to the inference that an accused is not remorseful, but the inference may not be drawn from his

15

decision not to testify or from his pleas of not guilty." *Paxton*, 64 M.J. at 487 (citing *Edwards*, 35 M.J. at 355).

We do not find error, much less plain error, in the government's argument stressing appellant's failure to apologize to NL. His shallow "wish of no ill will" comment towards NL was clearly not an expression of remorse and could be considered a veiled reference to his disagreement over her testimony and accusations. During his unsworn statement, appellant introduced evidence of his prior confinement and the adverse effects of his time in jail before the rehearing. In the context of the entire case, trial counsel's comments concerning appellant's failure to apologize and his time in jail were not improper, but rather a fair comment on appellant's unsworn statement and a reflection of appellant's lack of rehabilitative potential.

However, even if error, we do not find it prejudiced a substantial right of the appellant in this judge alone trial. To the degree counsel's comments may be found improper, we are convinced that the military judge was not unduly swayed by trial counsel's comments in the sentencing argument. Considering the record as a whole, and the relative weight of the parties' sentencing cases, we are confident that appellant was sentenced on the basis of the evidence alone.

**CONCLUSION**

The court affirms only so much of the finding of guilty of Specification 5 of Charge 1 as finds that the appellant:

> did, at or near Watertown, New York, between on or about 7 August 2008 and on or about 3 June 2009, engage in indecent conduct in the physical presence of his step-daughter [NL] a child under 16 years of age, by entering the bathroom where [NL] was showering, opening the shower curtain, looking at her naked body, and watching her shower, with intent to arouse the sexual desire of the accused.

The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the errors noted, we are confident the military judge would have sentenced appellant to at least a dishonorable discharge, confinement for eighteen years, and a reduction to the grade of E-1. *See United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2014); *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986); MCM, pt. IV, ¶ 10.e(1), (2)(a)-(b); Rule for Courts-Martial 1003(d)(3). The sentence is therefore AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Senior Judge MULLIGAN and Judge WOLFE concur.



FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court