# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39856 (f rev)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Michael J. WERMUTH**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 1 September 2022

————————————

*Military Judge:* Wesley A. Braun; Dayle P. Percle (remand).

*Sentence:* Sentence adjudged on 12 November 2019 by GCM convened at Dover Air Force Base, Delaware. Sentence entered by military judge on 30 December 2019 and re-entered on 7 September 2021: Dishonorable discharge, confinement for 3 years, and reduction to E-1.

*For Appellant:* Major Amanda E. Dermady, USAF; Major Sara J. Hickmon, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Cortland T. Bobczynski, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and CADOTTE, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge KEY and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

Appellant's case is before this court for the third time. A general court-martial composed of a military judge alone found Appellant guilty, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of possession of child pornography and one specification of distribution of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for four years, and reduction to the grade of E-1. The convening authority signed a Decision on Action memorandum which reduced Appellant's term of confinement to three years in accordance with the PTA, but took no other action on the sentence. Thereafter, the military judge signed an entry of judgment (EoJ) stating the final sentence, as modified by the convening authority's action, as a dishonorable discharge, confinement for three years, and reduction to the grade of E-1.

In his initial appeal to this court, Appellant raised four issues: (1) whether the military judge erred when he admitted a stipulation of fact into evidence that included victim impact statements as attachments; (2) whether the trial counsel committed prosecutorial misconduct during sentencing argument; (3) whether the convening authority erred by not taking action on the entire sentence; and (4) whether Appellant is entitled to sentence relief due to his civilian post-trial confinement conditions.[2] This court found error with respect to issue (3) and remanded the record to the Chief Trial Judge, Air Force Trial Judiciary, for corrective action with respect to the convening authority's failure to take action on the entire sentence. *United States v. Wermuth*, No. ACM 39856, 2021 CCA LEXIS 378, at \*7–8 (A.F. Ct. Crim. App. 30 Jul. 2021) (unpub. op.); *see also United States v. Brubaker-Escobar*, 81 M.J. 471, 472–75 (C.A.A.F. 2021) (per curiam) (holding the convening authority's failure to take action on the entire sentence was a procedural error tested for material prejudice to a substantial right). We deferred consideration of the remaining issues until the record returned to this court. *Wermuth*, unpub. op. at \*3.

On 17 September 2021, the record was redocketed with this court, including a new EoJ dated 7 September 2021 listing a corrected convening authority Decision on Action memorandum as an attachment. On 16 November 2021, Appellant submitted the record for review by this court without additional assignments of error. However, we found the corrected Decision on Action memorandum had been erroneously omitted from the record. Accordingly, we again

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise noted, all other references to the UCMJ and to the Rules for Courts-Martial (R.C.M.) and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant personally raised issue (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

returned the record to the Chief Trial Judge for corrective action. *United States v. Wermuth*, No. ACM 39856 (f rev), 2022 CCA LEXIS 208 (A.F. Ct. Crim. App. 1 Apr. 2022) (order).

Appellant's record of trial was again redocketed with the court on 22 April 2022. On 13 June 2022, Appellant again submitted the case for review without raising additional assignments of error. Accordingly, we address the three remaining issues raised in Appellant's initial appeal to this court. We find no remaining error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

# I. BACKGROUND

Appellant was stationed at Dover Air Force Base (AFB), Delaware, beginning in October 2016. Appellant was deployed overseas from July 2017 until January 2018, afterwards returning to Dover AFB.

Appellant created two Dropbox[3] accounts in June and December 2017 which he used to store and share images and videos of minors engaged in sexually explicit conduct. Appellant used accounts on Tumblr[4] and Kik[5] to communicate with other users who were interested in child pornography in order to seek, obtain, view, and exchange such material. Appellant would exchange links to Dropbox accounts with other individuals, which would allow Appellant to access child pornography in the other users' Dropbox accounts and allow the other users to access the child pornography in Appellant's Dropbox accounts. Appellant knew the other users were actually accessing his accounts because they would subsequently comment to him on the material they viewed.

By June 2018, Appellant's illicit activity had come to the attention of the Air Force Office of Special Investigations (AFOSI). AFOSI agents interviewed Appellant on 19 June 2018. During the interview Appellant admitted to the conduct described above, made a written statement admitting to possessing and distributing child pornography, and consented to a search of his apartment for digital devices he used to possess and distribute child pornography. According to the stipulation of expected testimony of AFOSI Special Agent (SA) EB, the primary case agent for AFOSI's investigation of Appellant, Appellant's

---

[3] At his court-martial, Appellant described Dropbox as an online "file management system" or "storage system" where electronic media such as "pictures, videos, [and] movies" can be stored.

[4] The stipulation of fact described Tumblr as "a microblogging and social networking website" that "allows users to post multimedia and other content to a short-form blog," which can be made "private."

[5] The stipulation of fact describes Kik as "a free instant messaging mobile application."

Dropbox accounts contained approximately 19,000 digital images and videos of child pornography as of February 2019. Analysis performed by the National Center for Missing and Exploited Children (NCMEC) identified 4,267 image files and 570 video files from known child pornography series among the files in Appellant's Dropbox accounts.

## II. DISCUSSION

### A. Victim Statements Attached to Stipulation of Fact

#### 1. Additional Background

Appellant's PTA required him to enter into a "reasonable stipulation of fact" with the Government. At Appellant's court-martial, the Government introduced Prosecution Exhibit 1, a stipulation of fact signed by Appellant, trial defense counsel, and trial counsel, which had 17 attachments appended. The stipulation provided, *inter alia*, that "the following facts are true and admissible for all purposes . . . relating to the charge and specifications," that "all attachments contained herein are admissible for any purpose," and that Appellant "waive[d] any objection to foundation, hearsay, and authentication, in accordance with the Military Rules of Evidence."

During the court-martial, the military judge explained to Appellant that a stipulation was an agreement that no one could be forced to enter. Appellant told the military judge he agreed he was entering the stipulation "voluntarily" and because he believed it was "in his best interest to do so." The military judge had Appellant review every paragraph of Prosecution Exhibit 1 and confirm each was true and Appellant wished to admit each was true. In addition, the military judge had Appellant review the attachments and confirm that everything in Prosecution Exhibit 1, to include the attachments, was true and Appellant wished to admit it was true. Trial defense counsel then stated the Defense had no objection to Prosecution Exhibit 1 and the military judge admitted it into evidence.

Attachment 13 to Prosecution Exhibit 1 was identified as an excerpt from a "Child Identification Report" prepared by NCMEC, which identified thousands of known files of child pornography Appellant possessed that were associated with identifiable victims. These "series" of images or videos of known child pornography were identified by particular names given to the various series.

Attachments 14, 15, 16, and 17 are typed documents identified as "Victim Impact Statements" related to four of the series identified in Attachment 13. Attachments 14 and 16 are apparently single statements by two victims; Attachment 15 is a statement by the mother of two other victims; and Attachment 17 is a series of three statements by another victim. Each statement describes

negative emotional, social, employment, and other impacts the victims have experienced due to their awareness of the existence and continued circulation of the child pornography in which they are depicted. The statements were evidently created with the intent that they would be used in legal proceedings related to the child pornography, but none make specific reference to Appellant or his offenses—in fact, all of the statements pre-date the charged time frame.

The stipulation of expected testimony of SA EB, which trial counsel read on the record for the military judge, identified the "victim impact statements" attached to the stipulation of fact as being "from the children and affected parties depicted in the digital images and videos from [Appellant's] child pornography collection listed by series name." The stipulation of fact and SA EB's stipulation of expected testimony both identified each of the attached statements with a particular series name.

### 2. Law

"We review a military judge's decision to admit evidence for an abuse of discretion." *United States v. Norwood*, 81 M.J. 12, 17 (C.A.A.F. 2021) (citation omitted). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

"Whether an accused has waived an issue is a question of law we review de novo." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Id.* (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). "[A] valid waiver leaves no error to correct on appeal." *Id.* (citations omitted). However, Article 66, UCMJ, 10 U.S.C. § 866, empowers a Court of Criminal Appeals (CCA) to address a legal error in spite of waiver or forfeiture at trial. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018) (citations omitted).

Rule for Courts-Martial (R.C.M.) 1001(c)(1) provides that a "victim of an offense of which the accused has been found guilty has the right to be reasonably heard at the presentencing proceeding relating to that offense." *See also* 10 U.S.C. § 806b(a)(4)(B) (stating the victim of an offense under the UCMJ has a right to be reasonably heard at a court-martial sentencing hearing). Such a victim may elect to make either a sworn statement subject to cross-examination, or an unsworn statement—oral, written, or both—not subject to cross-examination. R.C.M. 1001(c)(4), (5). "The right to make an unsworn statement

solely belongs to the victim or the victim's designee and cannot be transferred to trial counsel." *United States v. Edwards*, ___ M.J. ___, 2022 CAAF LEXIS 283, at *2 (C.A.A.F. 14 Apr. 2022) (citing *United States v. Hamilton*, 78 M.J. 335, 342 (C.A.A.F. 2018); *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018)) (interpreting R.C.M. 1001A (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).

R.C.M. 1001(b)(4) provides, *inter alia*, that during presentencing proceedings the Government may introduce, as evidence in aggravation, "evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused . . . ." The "revictimization . . . facet of child pornography is itself settled law . . . and why child pornography is [ ] considered a continuing offense . . . ." *Barker*, 77 M.J. at 384 (citations omitted).

> Evidence that otherwise would be inadmissible under the Military Rules of Evidence may sometimes be admitted at trial through a stipulation, if the parties expressly agree, if there is no overreaching on the part of the Government in obtaining the agreement, and if the military judge finds no reason to reject the stipulation "in the interest of justice."

*United States v. Clark*, 53 M.J. 280, 281 (C.A.A.F. 2000) (quoting *United States v. Glazier*, 26 M.J. 268, 270 (C.M.A. 1988)); *see also Hamilton*, 78 M.J. at 341 (quoting *Clark*, 52 M.J. at 281–82).

### 3. Analysis

Appellant contends the military judge plainly erred by admitting the stipulation of fact with the victim impact statements appended as Attachments 14, 15, 16, and 17. He contends the attachments do not comport with R.C.M. 1001(c) because there was no indication the victims specifically requested to have the statements introduced at Appellant's court-martial, nor was there any indication of how the victims were affected by Appellant's specific offenses. Appellant contends the statements were also inadmissible as evidence in aggravation under R.C.M. 1001(b)(4) because they were written before Appellant committed his offenses and do not indicate direct consequences of those offenses. Appellant recognizes that, in general, evidence otherwise inadmissible may be included in a stipulation of fact, but notes that there are limits to such stipulations. He contends the record indicates the attachments were in fact victim impact statements subject to R.C.M. 1001(c), citing their form and content and noting that they were referred to as "victim impact statements" in Prosecution Exhibit 1 itself. Accordingly, he asserts that by attaching the statements to Prosecution Exhibit 1, the Government improperly appropriated the victims' rights to present such statements. He compares this situation to the holding in *Clark*, where the United States Court of Appeals for the Armed

Forces (CAAF) explained that the inclusion of a reference to a polygraph result in a stipulation of fact was plainly erroneous in light of Mil. R. Evid. 707's prohibition on such evidence. 53 M.J. at 282; *see also United States v. Scheffer*, 523 U.S. 303, 317 (1998) (upholding constitutionality of R.C.M. 707). *But cf. United States v. Kohlbeck*, 78 M.J. 326, 331 (C.A.A.F. 2018) (holding "evidence about the facts and circumstances about a polygraph examination procedure offered to explain the reason or motivation for a confession" may be admissible notwithstanding Mil. R. Evid. 707).

In response, the Government contends Appellant waived any objection to Attachments 14, 15, 16, and 17; assuming Appellant's objection was merely forfeited rather than waived, the military judge did not plainly err by admitting Prosecution Exhibit 1 with the attachments; and assuming error, any such error did not have a substantial effect on the sentence. We agree with the Government that Appellant waived the objections he now asserts.

Waiver is the intentional relinquishment or abandonment of a known right. The record is clear that Appellant knew he was not required to agree to the stipulation of fact. It is also clear Appellant was aware the Defense could potentially oppose any of the attachments to Prosecution Exhibit 1 on the basis of foundation, authentication, or hearsay, but expressly declined to do so. Appellant and trial defense counsel repeatedly indicated they agreed that Prosecution Exhibit 1 and all of its attachments would be admitted into evidence, without objection. Moreover, it is clear Appellant had a substantial incentive to do so—a limitation on his maximum term of confinement that, in the event, reduced his adjudged sentence to four years down to three years, where he faced a maximum imposable term of 30 years. Furthermore, Appellant's court-martial took place on 12 November 2019, well after the CAAF clarified in *Barker* and *Hamilton* the distinction between prosecution evidence in aggravation and a victim's independent and personal right to present a statement; accordingly this is not a situation where the "failure to object was not waiver given the unsettled nature of the law at the time of [the] court-martial." *United States v. Schmidt*, 82 M.J. 68, 73 (C.A.A.F. 2022).

We recognize that in *Clark* the CAAF did not apply waiver and reviewed for plain error, in spite of the fact that the appellant agreed to the stipulation and "made no objections at his court-martial and raised no issues on appeal." 53 M.J. at 282. "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). More recent precedents from our superior court—taking a firmer line on the question of whether a statement of no objection constitutes waiver—lead us to the inescapable conclusion that Appellant unambiguously

waived any objection to the victim statements at issue here. *See, e.g., United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020); *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019); *Ahern*, 76 M.J. at 197; *United States v. Campos*, 67 M.J. 330, 332–33 (C.A.A.F. 2009). In this light, we find that *Clark* is best understood as turning on the unique nature of Mil. R. Evid. 707's prohibition on evidence of polygraph examinations.

We further recognize our authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), to pierce an appellant's waiver in order to correct a legal error. We find no cause to do so here. Cases such as this one involving large amounts of child pornography may pose distinct challenges for the Government in light of the victim rights set forth in Article 6b, UCMJ.[6] However, without deciding whether or not any error might have occurred in that respect, we note that the Government may itself properly present evidence of adverse victim impact as evidence in aggravation. *See* R.C.M. 1001(b)(4). Thus there is nothing per se inappropriate about the Government offering such evidence, and an accused may validly waive evidentiary objections to such evidence, as in this case. Appellant might have successfully opposed the introduction of such evidence, had he chosen to do so; however, he knowingly and purposefully elected to forego that opportunity in order to secure other benefits. Moreover, we find no evidence the Government "overreached" in order to induce Appellant's agreement to the stipulation of fact, nor that the "interest of justice" otherwise requires our intervention. *Clark*, 53 M.J. at 281.

Furthermore, we note Appellant was sentenced by a military judge. As in *Barker*, "many of the themes and harms" described in the victim statements "are well known to the law, and thus are presumed to have been known by the military judge." 77 M.J. at 384. Even if we were to assume error, this circumstance, coupled with the gravity and extent of Appellant's offenses, lead us to conclude the victim statements did not substantially influence the approved sentence.

## B. Trial Counsel Sentencing Argument

### 1. Additional Background

Prosecution Exhibit 1, the stipulation of fact, included portions of chat conversations Appellant engaged in with other Tumblr users related to child pornography and sexual interest in children. Prosecution Exhibit 1 also included

---

[6] *See Hamilton*, 78 M.J. at 339–40 ("[T]he right to be reasonably heard requires that the victims be contacted, given the choice to participate in a particular case, and, if they choose to make a statement, offer the statement themselves, through counsel, or through a 'victim's designee' where appropriate.") (citing R.C.M. 1001A(d)–(e) (2016 *MCM*); *Barker*, 77 M.J. at 382–83).

Appellant's admission to AFOSI agents that he was sexually aroused by child pornography.

During presentencing proceedings, Appellant provided oral and written unsworn statements. In each, Appellant told the military judge that he did not "know exactly what drove [Appellant] to look at child pornography. But [Appellant] plan[ned] to seek out mental health counseling at whatever confinement facility [he was] sent to. After [he] serve[d] out [his] sentence, [he] plan[ned] to continue to pursue counseling so that this never happens again."

Trial counsel's sentencing argument included, *inter alia*, the following:

> [Appellant] expressed that he wants rehabilitation -- to get help. Your Honor, he's known this investigation has [been] going on for about a year-and-a-half, and we heard no evidence today that he's actually gotten help. And it's clear, Your Honor, that he doesn't believe that he has an issue.
>
> . . . .
>
> I'll point your attention, again, to the Tumblr chats . . . . [Appellant] was asked if he, if he had ever been with a child, meaning, whether he's ever had sex or molested a child. He responds, "Sadly, no." Later on, he was asked by another user how old he likes them, meaning, children. He responds, "Six or seven," meaning years old.
>
> Your Honor, a six or seven-year-old child has probably just finished second grade. They're probably barely able to appreciate the math homework they just got, probably be more worried about T-ball or playing with their friends. What they shouldn't be worried about is someone taking advantage of them. Taking advantage of their bodies. Having men forcefully penetrate them while they're begging them to stop. And they certainly have -- shouldn't have to worry about people taking pictures and videotaping it all, so they can relive it every day as people are distributing this all over the [I]nternet and more and more people see it. And having -- they -- what they shouldn't have to worry about is having individuals, like, [Appellant] distribute them. In that same conversation, Your Honor, he's talking with another user about finding a pedomother[7] to help him sexually exploit chil-

---

[7] In context, the Tumblr chat attached to Prosecution Exhibit 1 that trial counsel referred to indicated the term "pedomother" referred to a woman who was willing to involve her minor child in sexual abuse.

dren. Calling that quote ["]Hot.["] Later on, he talks about train-ing children. He's talking, Your Honor, about grooming children to have sex with him.

So, Your Honor, not only do we have an individual actively seek-ing child pornography, not only advertising to exchange child pornography, not only actually distributing child pornography, but he discusses, exactly, what he would do with a child if he could. And not just with children who are strangers. In that same con -- chat conversation he says, that he wished he had a sister, and he'd never leave her room. He says that he has a niece. And you heard some testimony about that today. And won-dered if she would be into it. Meaning, having sex with him. Your Honor, this is a real, potential victim out there that he knows is walking and talking out there, that he's talking about sexually exploiting.

In the same chats, Your Honor, he asks an apparent female if she's really 16 [years old]. Leaning in with that -- confirming her age. He's talking directly to minors to solicit child pornography. This is exactly why a three to five-year sentence is appropriate, Your Honor. It serves as a, as a specific deterrent to this very individual. An individual who has expressed in his own words and through his own conduct what he would like to do with chil-dren all the while maintaining and distributing thousands upon thousands of files of child pornography.

Trial defense counsel did not object to these portions of trial counsel's ar-gument.

**2. Law**

When the defense objects to an improper argument at trial, we review the issue de novo. *Norwood*, 81 M.J. at 19 (citing *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019)). If there is no objection at trial, on appeal the appellant bears the burden to demonstrate plain error. *Id.* (citing *Voorhees*, 79 M.J. at 9). When reviewing an allegedly improper argument for plain error, the appellate court "must determine: (1) whether trial counsel's arguments amounted to clear, obvious error; and (2) if so, whether there was 'a reasonable probability that, but for the error, the outcome of the proceeding would have been differ-ent.'" *Voorhees*, 79 M.J. at 9 (quoting *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017)) (additional citations omitted).

"A prosecutorial comment must be examined in light of its context within the entire court-martial." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F.

2005) (citation omitted). "Trial counsel is entitled 'to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.'" *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Trial counsel is prohibited from arguing irrelevant matters, including facts not in evidence. *United States v. Tyler*, 81 M.J. 108, 111 (C.A.A.F. 2021) (citation omitted). The CAAF "generally has not permitted a trial counsel to comment on the failure of the defense to produce evidence." *United States v. Taylor*, 47 M.J. 322, 324 (C.A.A.F. 1997) (citations omitted).

We need not determine whether a trial counsel's comments were in fact improper if we determine that the error, if any, did not materially prejudice the appellant's substantial rights. *See United States v. Halpin*, 71 M.J. 477, 479–80 (C.A.A.F. 2013). With respect to findings arguments, "[w]e weigh three factors to determine whether trial counsel's improper arguments were prejudicial: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.'" *United States v. Andrews*, 77 M.J. 393, 402 (C.A.A.F. 2018) (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)). "Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be 'confident that [the appellant] was sentenced on the basis of the evidence alone.'" *Frey*, 73 M.J. at 248 (quoting *Halpin*, 71 M.J. at 480).

### 3. Analysis

On appeal, Appellant contends trial counsel's argument was improper in three respects: improperly commenting on the Defense's sentencing case, particularly Appellant's unsworn statement; arguing that Appellant's punishment should be increased based on uncharged misconduct; and arguing that Appellant should be punished for crimes committed by others. We consider each assertion in turn.

#### a. Comments on the Defense Case

Appellant contends trial counsel's comment on Appellant's desire for rehabilitation, as expressed in his unsworn statement, was improper for two reasons. First, Appellant asserts his unsworn statement "is not evidence" and therefore "cannot be the subject of argument." Appellant is correct that his unsworn statement is not "evidence." *See United States v. Marsh*, 70 M.J. 101, 104–05 (C.A.A.F. 2011) (citing *United States v. Breese*, 11 M.J. 17, 24 (C.M.A. 1981)). However, he is incorrect in that trial counsel *may* comment on an accused's unsworn statement during sentencing argument. *Id.* at 105; *see also Tyler*, 81 M.J. at 113 (holding unsworn victim impact statements, like unsworn statements from the accused, may be subject to comment during argument).

Second, Appellant asserts trial counsel's statement that the court had "heard no evidence" that Appellant had "actually gotten help" during the "year-and-a-half" of investigation was improper because the Defense had no obligation to put on evidence. The implication of trial counsel's comment was that the Defense had failed to introduce such evidence. We agree this argument by trial counsel was, at a minimum, poorly phrased. Trial counsel is generally not permitted to comment on the failure of the defense to produce evidence. *Taylor*, 47 M.J. at 324 (C.A.A.F. 1997). Although *Taylor* and the cases cited therein dealt specifically with evidence for findings, with regard to sentencing evidence this court has noted: "Whenever trial counsel chooses to argue that an accused has not 'shown' the sentencing authority something, counsel treads backwards into a mine field in over-sized galoshes while wearing a blindfold." *United States v. Feddersen*, No. ACM 39072, 2017 CCA LEXIS 567, at *9 (A.F. Ct. Crim. App. 21 Aug. 2017) (unpub. op.). In response, the Government cites *United States v. Edwards* for the principle that trial counsel may comment on an accused's expression of remorse in an unsworn statement that "can be arguably construed as being shallow, artificial, or contrived." 35 M.J. 351, 355 (C.M.A. 1992) (citations omitted). However, this response misses the mark. The concern is not that trial counsel commented on Appellant's unsworn statement, but that he did so by implying the Defense failed to introduce evidence substantiating Appellant's statement, rather than referring to "other evidence in the record which gives rise to the inference that [the] accused [wa]s not remorseful." *Id.*

Nevertheless, we need not decide whether trial counsel's comment about the absence of evidence that Appellant had "actually gotten help" amounted to plain or obvious error, because we find Appellant cannot demonstrate prejudice. *See Halpin*, 71 M.J. at 479–80. Although no specific corrective measures were taken—trial defense counsel did not object—the remaining factors weigh in favor of finding no prejudice to Appellant's material rights. Significantly, Appellant was sentenced by the military judge, who is "presumed to know the law and to follow it absent clear evidence to the contrary," and to "distinguish between proper and improper sentencing arguments." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted). In addition, this particular reference to the absence of evidence that Appellant sought rehabilitation was not severe. It was a brief comment rather than a recurring theme of the argument. Moreover, the point itself was weak; we presume the military judge understood the Defense was under no obligation to produce evidence, and that there were valid reasons why Appellant might have deferred treatment while the investigation was pending or, having obtained treatment, declined to introduce such evidence in court. Trial counsel's point was also muted by the evidence that Appellant cooperated with the AFOSI investigation and pleaded

12

guilty to the charged offenses, reflecting favorably on his rehabilitation potential. *See Edwards*, 35 M.J. at 355 (citing R.C.M. 1001(f)(1) (*Manual for Courts-Martial, United States* (1984 ed.)). Furthermore, the properly admitted evidence thoroughly supported the sentence imposed by the military judge. Finally, we note that in accordance with the PTA, the convening authority reduced Appellant's confinement from four years to three years. Thus, in order to materially prejudice Appellant's substantial rights in terms of his sentence to confinement, the alleged error would need to have caused the military judge to increase Appellant's term of confinement by more than one year. We are certain this was not the case, and we are also certain this argument did not induce the military judge to impose either the dishonorable discharge or the reduction in grade. Accordingly, we are confident Appellant was not materially prejudiced by the asserted error.

### b. Comments on Uncharged Misconduct

Next, Appellant contends trial counsel "[e]ssentially . . . labeled [Appellant] as a child predator" and argued he "would sexually abuse and exploit actual children if he was not subjected to lengthy confinement." Appellant contends this was improper because Appellant was to be sentenced only for possessing and distributing child pornography, not for any actual or attempted misconduct with a child. *Cf. Frey*, 73 M.J. at 249 ("Trial counsel's insinuation that [a]ppellant was necessarily guilty of additional offenses and would be a serial recidivist if not confined was both unsubstantiated and severe.").

The Government responds that the Tumblr messages trial counsel referenced in his argument are circumstances directly relating to Appellant's distribution and possession of child pornography, and therefore proper aggravating circumstances under R.C.M. 1001(b) for trial counsel to comment on. The Government further contends that, to the extent trial counsel referred to evidence Appellant solicited a minor to provide him with child pornography or other uncharged misconduct, such evidence was a proper matter in aggravation "because it directly related to the charged offense[s] as part of a continuing" course of conduct, "to show the full impact of [A]ppellant's crimes." *United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001). The Government cites this court's unpublished opinion in *United States v. Lozano* for the principle that "[t]he prosecution may properly present the complete facts as matters in aggravation, including the *res gestae* of the appellant's crime, without surgically removing those facts that paint the appellant in a negative light and could have been separately charged but were not." No. ACM S32043, 2013 CCA LEXIS 809, at *6 (A.F. Ct. Crim. App. 19 Sep. 2013) (unpub. op.).

We agree with the Government to the extent that the evidence of Appellant's Tumblr chats was properly admitted, and trial counsel could properly

comment on them *for certain purposes*.[8] In sentencing argument, trial counsel may properly comment on "the nature and circumstances of the offense" and "the need for the sentence to . . . rehabilitate the accused." R.C.M. 1002(f)(1), (3)(F); *see also* R.C.M. 1001(h) ("Trial counsel may . . . refer to the sentencing considerations set forth in R.C.M. 1002(f)."). To the extent Appellant's Tumblr chats reflected the circumstances under which he came to possess and distribute child pornography and the depth of his self-described sexual interest in children, it was proper for trial counsel to comment on them to illustrate the circumstances of Appellant's offenses and in relation to Appellant's potential for rehabilitation. This was particularly so in light of defense evidence and Appellant's unsworn statement attempting to portray Appellant's positive rehabilitation potential.

However, it would not have been appropriate for trial counsel to suggest Appellant should receive more punishment based on speculation that Appellant had engaged or would engage in actual child sexual abuse. Appellant was not convicted of such offenses. The Government did not introduce evidence associating the possession or distribution of child pornography with an increased risk of committing such offenses. Moreover, contrary to the Government's suggestion, this is not a situation like *Nourse* involving actual evidence of a continuing course of closely related uncharged misconduct which illustrates the "full impact" of the offenses for which Appellant was actually convicted and to be sentenced. This portion of trial counsel's argument suggested Appellant's comments indicated he was likely to sexually abuse children, unless deterred; at a minimum, trial counsel's argument brushed against the line of impermissible argument.

However, as with Appellant's previous contention, we need not decide whether trial counsel's argument amounted to plain or obvious error, because we conclude Appellant cannot demonstrate prejudice. Our concern would be much greater had Appellant been sentenced by court members. However, the military judge who sentenced Appellant is presumed to know the law and distinguish between proper and improper arguments. *Erickson*, 65 M.J. at 225. Trial counsel's argument was not so inflammatory or blatantly improper as to

---

[8] We note Prosecution Exhibit 1, the stipulation of fact, recited Appellant's agreement that the stipulation and its attachments were "admissible for any purpose and [Appellant] waive[d] any objection to foundation, hearsay, and authentication, in accordance with the Military Rules of Evidence." We find implicit in this statement that Appellant agreed to the use of Prosecution Exhibit 1 for any *lawful* purpose at the various stages of his court-martial—*e.g.*, motions, guilty plea inquiry, findings, or presentencing— without the evidentiary requirements and restrictions normally applicable under the Military Rules of Evidence. We do not find Appellant thereby waived any objection to improper trial counsel argument based on Prosecution Exhibit 1.

cause us to question these presumptions. Accordingly, we presume the military judge understood and considered the evidence and trial counsel's argument for permissible purposes, and did not consider them for impermissible ones. Therefore, we conclude this portion of trial counsel's argument did not materially prejudice Appellant's substantial rights.

### c. Comments on Misconduct by Others

Finally, Appellant contends trial counsel's reference to men sexually abusing 6- and 7-year-old children while the acts are photographed or recorded, and to "people" distributing such material, improperly invited the military judge to punish Appellant for crimes committed by others. He compares this case to *United States v. Jensen*, where this court expressed concern that at certain points "a reasonable factfinder could not discern if trial counsel was arguing for a heightened sentence based on the facts underlying [a]ppellant's possession and distribution of child pornography, a permissible argument, or whether trial counsel impermissibly argued for a heightened sentence for crimes committed by others." No. ACM 39573, 2020 CCA LEXIS 163, at *17 (A.F. Ct. Crim. App. 19 May 2020) (unpub. op.). Appellant contends in the instant case trial counsel similarly appeared to argue he was accountable for the actions of producers of child pornography, as well as others besides himself who possessed and distributed such material.

We find this aspect of trial counsel's argument was not plainly or obviously erroneous. In context, trial counsel was describing the nature of child pornography and how the actions of those who, like Appellant, possess and distribute such material perpetuates the victimization—a matter the CAAF has described as "settled law." *Barker*, 77 M.J. at 384 (citation omitted). This was a fair comment on the "nature and circumstances" of Appellant's offenses, R.C.M. 1102(f)(1), and not an invitation to punish Appellant for the actions of others. In comparison, we find the argument described in *Jensen* more extensively blurred the distinction between the appellant's offenses and the actions of others in justifying a specific sentence recommendation. Moreover, we note that in *Jensen* the court declined to decide whether the argument amounted to plain or obvious error, finding instead the appellant failed to demonstrate material prejudice to a substantial right. *Jensen*, unpub. op. at *18.

Assuming *arguendo* trial counsel's reference to the actions of others was improper, we again find Appellant fails to demonstrate material prejudice. To the extent trial counsel's argument exceeded proper bounds, we conclude the infraction was not severe, presume the military judge could distinguish proper and improper sentencing argument, and find the sentence imposed was fully supported by the evidence. *See Frey*, 73 M.J. at 249; *Erickson*, 65 M.J. at 225.

## C. Post-Trial Confinement Conditions

### 1. Additional Background

Prior to deliberating on the sentence, the military judge confirmed with trial defense counsel that they had advised Appellant of his post-trial and appellate rights. Appellant confirmed that was so. Trial defense counsel provided the court an 11-page document entitled "Post-Trial and Appellate Rights Advisement," signed by Appellant and one of his trial defense counsel and marked as an appellate exhibit. One section of this document addressed Appellant's right to seek relief for cruel or unusual punishment in violation of the Eighth Amendment[9] and Article 55, UCMJ, 10 U.S.C. § 855. This section included the following advice:

> In order to get relief for the poor conditions of your confinement, you ordinarily must exhaust every administrative means available to attempt to correct the issue. This includes (1) submitting a complaint to the confinement facility (preferably in writing); (2) requesting relief through clemency (if known at that time); and (3) filing a complaint with the commander who ordered your confinement under Article 138, UCMJ[, 10 U.S.C. § 938].[ ] By letting your trial defense counsel or your appellate counsel know of the issue as soon as possible, they can assist you with all of these procedures. If you have trouble reaching your attorney because of the conditions of your confinement, be sure to submit a complaint to the confinement facility promptly, repeatedly, and in writing (if possible).

Appellant was sentenced and entered confinement on 12 November 2019. Appellant elected not to submit clemency matters to the convening authority. The staff judge advocate prepared a written recommendation (SJAR) for the convening authority dated 10 December 2019. Copies of the SJAR were served on Appellant and on trial defense counsel on 13 December 2019; Appellant and trial defense counsel both indicated in writing they would not submit a response to the SJAR. The convening authority issued his initial decision on action on 30 December 2019.

On appeal, Appellant moved to attach a declaration he signed dated 19 March 2021; this court granted the motion. The declaration describes the conditions of Appellant's confinement in a civilian facility in Delaware from 12 November 2019 until he was transferred to a military facility in late January 2020. According to the declaration, Appellant shared a five-foot by ten-foot cell with two other confinees, which required one of the confinees to sleep on a mat

---

[9] U.S. CONST. amend. VIII.

on the floor rather than on a bunk. Appellant stated he personally slept on the mat for two or three weeks. Appellant further asserted he spent most of his time in his cell, "usually" spending two hours per day outside the cell for recreation and one hour outside for meals. Appellant stated his first sergeant visited him twice at the facility, and he told his first sergeant about his confinement conditions. However, Appellant acknowledges he did not file a grievance with the confinement facility because he "did not think it would change anything," and he did not file an Article 138, UCMJ, complaint with his command because he "did not know what that was or what [he] was required to do."

In response, the Government moved to attach a declaration from BE, the correctional treatment administrator for the confinement facility. BE disputed Appellant's claim regarding the size of his cell, asserting it was in fact 7 feet by 13 feet. BE also asserted Appellant was allotted four hours per day of recreation time, not including meal times, and was generally permitted to leave his cell as needed to "use the bathroom." BE agreed with Appellant that three confinees were housed in Appellant's cell for the majority of Appellant's time at the facility due to overcrowding. He further stated there was no record Appellant filed a complaint or grievance with the facility regarding any issue.

**2. Law**

We review de novo whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (citations omitted). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]."

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second alteration in original) (internal citations omitted).

As a general rule, a CCA reviewing a case referred to it "cannot consider matters outside the 'entire record,'" defined as the "record of trial," "allied papers," and "briefs and arguments that government and defense counsel (and the appellant personally) might present regarding matters in the record of trial and 'allied papers.'" *United States v. Jessie*, 79 M.J. 437, 440–41 (C.A.A.F. 2020) (citing R.C.M. 1103(b)(2) and (3) (2016 *MCM*); *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988); *United States v. Fagnan*, 30 C.M.R. 192, 194 (C.M.A. 1961)). In *Jessie*, the CAAF recognized that its decisions since *Fagnan* indicated two exceptions to this general rule. *Id.* at 442–43. First, "some precedents have allowed the CCAs to supplement the record" with affidavits or hearings "when deciding issues that are raised by materials in the record." *Jessie*, 79 M.J. at 442. Second, CAAF precedents also "allowed appellants to raise and present evidence of claims of cruel and unusual punishment and violations of Article 55, UCMJ, even though there was nothing in the record regarding those claims." *Id.* at 444.

### 3. Analysis

Appellant personally contends the conditions of his civilian post-trial confinement described in his declaration—specifically the requirement that he sleep on the floor and the confinee-to-square-footage ratio—contravened Air Force confinement standards and amounted to cruel and unusual punishment under the Eighth Amendment and Article 55, UCMJ. *See* Air Force Manual 31-115, *Department of the Air Force Corrections System*, ¶ 4.1.1. (22 Dec. 2020). Under *Jessie*, we may consider Appellant's declaration with respect to the alleged violations of the Eighth Amendment and Article 55, UCMJ.

We note BE's declaration contradicts Appellant's declaration in certain respects as described above. We find a post-trial evidentiary hearing is not required to resolve the discrepancies. *See* 10 U.S.C. § 866(f)(3); *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Even if we resolved the differences in Appellant's favor, he would not be entitled to relief. *See Ginn*, 47 M.J. at 248.

In order to secure relief, Appellant bears the burden to satisfy all three prongs of the test set forth in *Lovett*. Without deciding whether Appellant has met his burden with respect to the first or second prongs, we find he has comprehensively failed to satisfy the third. Despite ample opportunity to do so, and despite being specifically instructed on the requirement to seek administrative relief, Appellant failed to file any grievance or complaint with the confinement facility; declined to raise any concern with the convening authority either in clemency or in response to the SJAR; and failed to file an Article 138, UCMJ, complaint with his command. In rare cases, we have found cause to excuse failure to exhaust such remedies. *See, e.g., United States v. McGriff*, No. ACM 39306, 2018 CCA LEXIS 567, at *20–23 (A.F. Ct. Crim. App. 11 Dec. 2018) (unpub. op.); *United States v. Meakin*, No. ACM 38968, 2017 CCA LEXIS 476,

at *35 (A.F. Ct. Crim. App. 14 Jul. 2017) (unpub. op.), *aff'd*, 78 M.J. 396 (C.A.A.F. 2019); *United States v. Alexander-Lee*, No. ACM S31784, 2012 CCA LEXIS 95, at *9–11 (A.F. Ct. Crim. App. 16 Mar. 2012) (unpub. op.). However, Appellant offers no persuasive reason for not pursuing such measures. Accordingly, Appellant has failed to demonstrate he is entitled to relief.

Appellant further contends that even if he cannot satisfy the *Lovett* criteria, this court should grant relief under our authority pursuant to Article 66, UCMJ, to review his sentence for appropriateness in light of legal deficiencies in the conditions of his confinement. *See United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016). However, in *United States v. Willman*, the CAAF explained that although *Jessie* permits a CCA to review material from outside the "entire record" with respect to alleged violations of the Eighth Amendment and Article 55, UCMJ, it may not do so with respect to sentence appropriateness review more generally, "even when it had already considered that evidence to resolve Appellant's Eighth Amendment and Article 55, UCMJ, [ ] claims." 81 M.J. 355, 361 (C.A.A.F. 2021). Moreover, apart from Appellant's declaration, the conditions of Appellant's post-trial confinement were not otherwise "raised by materials in the record." *Jessie*, 79 M.J. at 442. Accordingly, Appellant has failed to demonstrate he is entitled to sentence appropriateness relief under *Gay*.

### III. CONCLUSION

The approved findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court